KENNON, respondent, *v.* GILMER ET AL., appellants.

PLEADING.— In an action for damages for injuries received, when the complaint shows that the proximate cause of the injury was plaintiff's own act, it further devolves upon him to allege and prove that in thus acting he exercised that degree of care and prudence that a reasonable person would have used in like circumstances.

JURY — *Right to a full and lawful panel at the commencement of trial.*— Every litigant has the right to have a full and lawful panel before him at the commencement of a trial from which first to select a jury. If, between the time of selecting the panel and the commencement of the trial, the law should be changed so as to require a larger panel, the litigant has the right to demand the larger panel.

*Appeal from Second District, Deer Lodge County.*

S. DE WOLFE, for appellants.

Appeal from the second district court of Deer Lodge county from a judgment in favor of plaintiff (respondent

in this court) for the sum of $17,167, damages, and costs taxed at $341.75.

The action was for injuries received by plaintiff while a passenger on defendants' coach, on the 30th of June, 1879, between the towns of Deer Lodge and Helena. The answer denies negligence on the part of defendants, and alleges contributory neglect on the part of plaintiff as the direct cause of the injury. See Answer, Transcript, pp. 10, 11.

Defendants filed a general demurrer to the amended complaint, which was overruled by the court. Transcript, pp. 7, 9. This is the first error alleged.

The amended complaint alleges that the coach in which plaintiff was being conveyed as a passenger was, by the fault and neglect of the defendants, placed in a condition so as to "imperil the safety of plaintiff" and "to render it apparently unsafe for plaintiff to longer remain on said coach; that, being actuated by great fear of bodily injury by longer remaining thereon," he jumped, and thereby received the injury complained of. Transcript, pp. 2, 7.

The first of these allegations is that the coach was placed in a position so as to "imperil the safety" of plaintiff; and the second, which is clearly an allegation in the alternative (although not such in form), is that the coach was placed in a position to "apparently" render it unsafe for the plaintiff to remain longer in the coach, and in fear of danger he jumped, etc.

The rule is that pleadings shall be construed most strongly against the pleader, and if we accept the second of these allegations as the true one, the coach was not in a position to actually imperil the plaintiff, but he thought it was, and therefore jumped, and was injured. As the injury resulted from the jumping, and not from the accident to the stage, it was incumbent on the plaintiff first to allege and then prove that he was in the exercise of ordinary and proper prudence in jumping, and

was thus free from any contributory negligence. This he has not done, and the complaint in this respect is deficient, and does not state facts sufficient to constitute a cause of action, and was for this cause subject to demurrer. The authorities are by no means uniform as to the proof of contributory negligence, and it is impossible to harmonize them.

Shearman & Redfield, in their work on Negligence (3d ed.), in section 43, and in the appendix to the section, have collated the cases and shown their conflict. In this condition of the authorities this court is free to act upon the weight of authority, or the reasons which support them.

Generally the proof of the injury furnishes the proof or raises a strong presumption of negligence on the part of the carriers. As in cases where the stage or vehicle in which the passenger is being conveyed is overturned, or cars run off, or are thrown from the track, in these and all similar cases the accident to the conveyance is what injures the passenger, and the condition of the vehicle, coupled with the injury, raises a presumption of negligence on the part of the carrier which he must rebut or disprove, otherwise he will be chargeable.

But not every accident raises such a presumption; and when, as in the present case, the passenger is injured by the act of jumping, no presumption of negligence on the part of the carrier arises from the accident itself, and the party claiming damages should both allege and prove that the injuries complained of did not result from neglect or the omission of proper caution on his part. In other words, as stated in the books, that he was not guilty of contributory negligence. 12 N. Y. 236; 18 N. Y. 248; id. 540; 20 N. Y. 65; 24 N. Y. 430; 12 Pick. 177; 21 Pick. 146; 101 Mass. 455; Shear. & Red. on Neg. secs. 34, 281; 22 Barb. 574; 29 Barb. 234; 21 Barb. 339; 33 Barb. 414; Wait's Act. & Def. vol. 2, p. 90, and cases cited; 49 Cal. 253; Thompson, Car. of Passengers, p. 214.

II. The court erred in overruling defendants' challenge to the jury. Transcript, pp. 42, 47.

The trial jury summoned for the February term, 1881, were summoned, it is presumed, in accordance with the requirements of section 773 of the fifth division of the Revised Statutes, which required the county commissioners, twenty days before the commencement of a term of the district court, to draw eighteen names from the list of one hundred persons previously selected; and the eighteen persons so drawn, the statute says, shall be summoned as trial jurors for the next ensuing term of the district court.

By an act of the territorial legislature, approved February 23, 1881, the number of trial jurors to be thus summoned was increased from eighteen to thirty, and section 2 of the latter act provides that of the thirty jurors so summoned they should be excused for cause or by lot until the number was reduced to twenty-four, and the latter number should at all times be kept full, and should constitute the trial jury for the term. The act is explicit in requiring the clerk of the court, under the direction of the court, to draw from the box furnished by the county commissioners so many additional names as the court shall direct, to fill the panel, who shall be summoned in like manner as the original panel. This law was in full force on the 24th day of February, 1881, and also on the 28th day of February, 1881, when the order was made for drawing additional trial jurors, found on pp. 16 and 17 of the transcript.

Without the passage of the act of 1881, the mode of drawing these additional jurors was clearly unauthorized. Section 777 of the fifth division of the Revised Statutes clearly points out the mode of obtaining additional trial jurors when they become "necessary." These directions were not observed by the court, but it evidently proceeded, or attempted to proceed, under section 779; but this section was not intended to supersede sec-

tion 777, but provided a mode of obtaining grand or trial jurors when there had been a failure to obtain them under sections 773 and 777. The language used in section 779 is, "when there is not a sufficient number present, or those summoned have been discharged, it shall be lawful," etc. It is a familiar principle, that effect must, if possible, be given to all parts of a statute; and it is plain, on reading sections 777 and 779 together, that the law in the first instance required additional jurors to be drawn from the box containing the list of names prepared by the county commissioners, and resort was afterwards to be had to the mode pointed out in section 779 when they failed to attend or were discharged. A different construction would render section 777 obsolete. Code, section 246. This section requires additional jurors when required to be drawn from the box prepared by the county commissioners.

Sections 773 to 779 was the act approved January 12, 1872, and cannot be reconciled with section 246 of the code, which was not passed until 1877. The latter act repeals the former if both cannot stand.

But the entire method of completing the panel, as well as the number composing it, was changed by the act of February 23, 1881, which was in force at the time, and the mode of drawing additional jurymen adopted by the court was utterly at variance with its requirements.

A requisite number of persons having the qualifications of jurors will not constitute a jury, or panel of jurors, unless they are drawn and summoned as jurors in conformity with law. *Lincoln* v. *Stowell,* 73 Ill. 246; 3 Blackf. 37; id. 258; 13 Wall. 434.

III. Defendant excepted to the sixth, eighth, ninth and twelfth instructions given by the court to the jury at the instance of the plaintiff.

Waiving in argument any objection to these instructions, excepting the ninth only, that instruction is clearly erroneous and misleading, in telling the jury that

in assessing the damages of plaintiff they may "take into consideration his mental and bodily pain and suffering from the time of the injury to the present time, and what it is likely to be in future."

The authorities are not in harmony on the question as to whether mental suffering is an element of damages when considered separate and apart from physical suffering arising from injury. Mr. Greenleaf holds that it is not, except in cases of wilful injury. 2 Greenl. Ev. sec. 267; *Johnson* v. *Wells, Fargo & Co.* 6 Nev. 226; *Quigley* v. *C. P. R. R.* 11 Nev. 369.

In the latter case, which was an action for being wrongly ejected from defendant's car, the court drew a distinction between actions of that kind, which proceed from malice or wilfulness, and actions arising from injuries caused by negligence only, and holds that in the former damages may be recovered for mental suffering, while in the latter they cannot; and this appears a just distinction.

Whatever the law may be as to this point, it is clear that that part of the instruction which authorized the the jury in estimating damages to take into consideration what the mental and bodily sufferings of the plaintiff were "likely to be in future" was clearly erroneous.

Damages, like other facts in a case, must be proven in order to authorize a verdict, while this instruction substitutes for proof the speculative or conjectural opinions of the jury themselves. Such a method of estimating damages is alike contrary to reason and to the nature of judicial proceedings, which requires evidence to support verdicts, and verdicts to be based on evidence. We are not without authority, as this very point underwent decision in the case already cited of *Curtis* v. *Rochester R. R.* 18 N. Y. 542.

There was no evidence whatever offered on the part of plaintiff as to either mental or physical suffering in the future. This instruction to the jury, therefore, left them

entirely free to speculate as to what these sufferings
might be. Mr. Kennon, on his examination, testified
that he had suffered in mind more than he had physic-
ally, and for aught this court can tell, the jury, in esti-
mating damages, may have considered that the mental
suffering in the future would also be greater, and this
may have had weight in determining the amount of the
verdict. 17 Cal. 39; 42 id. 409; 50 id. 630; 51 id. 223; in
which cases it was held that injury would be presumed
in case of error, unless the record showed the contrary;
here it does not. Graham & W. on New Trials, 708.

IV. The court erred in overruling defendants' motion
for a new trial on the grounds of excessive damages, and
because the verdict was against the evidence. No exact
rule for the measurement of damages can be established,
owing to the very nature of jury trials, and the different
estimates which different men will place on the same in-
juries. But when the verdicts are excessive courts have
not hesitated to set them aside and submit the cause to
another jury. Courts often do this while declaring that
it is the special province of the jury to assess the dam-
ages, and the legislature evidently deemed the power to
set aside verdicts as useful, otherwise they would not
have conferred the power on the courts.

Many of the cases under this head are collected and
commented on in the decision of *Collins* v. *R. R.* 12
Barb. 492, and in 19 Barb. 461. In *Boyce* v. *Cal. Stage
Co.* 25 Cal. 460, the injuries to plaintiff were as severe as
they could be, and the plaintiff survive. They were also
of a permanent kind, and rendered plaintiff unable to
make a livelihood by any kind of labor. The damages
awarded in that case were $16,500, which the court re-
fused to set aside as excessive. In this case, for a less
injury, the jury have awarded heavier damages. No
amount of damages would or could be a recompense for
the loss of a limb, and the suffering and inconvenience
arising therefrom. And it is not on this theory that the

law acts in awarding damages to the injured party in a case of negligence, but it is to award such compensatory sum as will reimburse the person injured for the expenses and suffering incurred by the injury. Beyond this the law cannot go, if it should take the entire estate of the person causing the injury and give it to the person injured.

V. The motion for a new trial on the grounds that the evidence was insufficient to justify the verdict is also one which addresses itself to the sound discretion of the court before whom the cause was tried, and appellate courts are loth to interfere with the decision of the lower courts on points of this kind. Still, if there has been an abuse of discretion, appellate courts will reverse the court below as well on this as other errors. The rule of the court in reversing motions of this kind, and the reasons therefor, are fully stated in 23 Cal. 243; 46 Cal. 585; id. 576; 37 Cal. 40; 50 Cal. 166; 33 Cal. 525. In the last case the court, quoting with approval from Graham & Waterman on New Trials, says, "that if the judge believes that the verdict is against the truth of the case, i. e., is contrary to the weight of the evidence, he should grant a new trial, otherwise the power of courts over verdicts is a mockery and a delusion." 49 Barb. 583.

It would be, perhaps, an unwarranted assertion to say that there is no evidence whatever in this case tending to support the verdict, but the record amply supports the statement that the vast weight and preponderance of the evidence introduced by the plaintiff, as well as by the defendants, disproves any negligence on the part of the defendants. And this weight and preponderance in the evidence is still strengthened when the situation of the witnesses, their pursuits and means of knowledge of the facts testified to, are considered. See testimony of Marion, Spear, Forbis, Mitchell and McCormick as to the condition of the driver during the trip, and compare with it the statement of Mrs. Millie Goodell, that Mantle was

"so drunk when he came to the station on the day of the accident that he could hardly sit on the seat." Compare, also, the statements of both the Mesdames Goodell in regard to the team with that of Mr. Riddle, Mr. Watson and others who were well acquainted with the horses and had driven and handled them for years, whereas both of these ladies testify that they never rode after the team. These ladies are also contradicted by all the other witnesses, both for plaintiff and defendants, as to the horses that were in the team on the day of the accident, and of the position they occupied. In some of their statements they must have been mistaken, and this serves to throw doubt over their entire testimony, particularly so when they are contradicted by other witnesses with better means of knowledge. Aside from the testimony of these two ladies, there was no evidence of negligence on the part of defendants, or any insufficiency in the means employed by them.

And it is submitted that from the great weight and preponderance of the evidence the court erred in overruling defendants' motion for a new trial on that ground.

THOS. L. NAPTON and J. C. ROBINSON, for respondent.

Brief and points made by Thomas L. Napton, of counsel for respondent:

1. The proposition as error first presented by appellants' attorney for the consideration of this court is, in brief, that the complaint does not state a cause of action against defendants.

It is not necessary, in an action for personal injuries received, for the plaintiff to negative the idea of his contributing to the injury received in his complaint. It devolves upon the defendants to show contributory negligence before the rights of plaintiff can be defeated. See *Higley* v. *Gilmer et al.* 3 Mont. 90, and cases there cited; 22 Am. Rep. 714; 41 Wis. 105.

Admitting, for the sake of argument, that this had

not been done, the court, by examination of the complaint, on pages 3 and 4 of the transcript, will see that the allegations of the complaint are in the conjunctive form, and completely negative any idea of contributory negligence; and the defendants' counsel evidently thought so and believed so, and acted upon that theory, or they would not have charged contributory negligence in the answer, but would have relied upon denials of the allegations in the complaint. See p. 11 of transcript, subdivision 4 of answer.

According to the rules of pleading, the plaintiff should allege that the defendants were common carriers; that he was a passenger; that the defendants had injured him; the extent of the injury and the extent of the damages. Then the defendants could admit, as in this case they have done, that they were carriers; that the plaintiff received the injury complained of while a passenger, or deny that his life was so "imperiled and endangered" as to compel him to jump from the coach, and that he received the injury from said act.

Further. This court will presume that the defendants had a fair trial and a just verdict and judgment, even though the complaint should be thought defective, and even though it does not state a cause of action, for the reason that if a party go to trial on defective pleadings, tries his case and saves no exception to the pleadings, the court will presume that what was missing in the pleadings was supplied by the evidence without objection; and in this case we have none to review except to an instruction and challenge to the panel of jurors. See *Hershfield* v. *Aiken*, 3 Mont. 442, and cases there cited.

The error complained of does not affect the substantial rights of the parties, though excepted to, and in this case there is no exception. We have no evidence to review; and if, under any circumstances, the court could enter the judgment it did below, every presump-

tion is in its favor, and the judgment should not be reversed.

The jury found their verdict for plaintiff and assessed his damages. There is every presumption that the verdict was right, as both the judge presiding and the jury agreed.

2. The second objection as error, urged by appellants, is that the jurors were not drawn from the box according to *law*, and their counsel therefore challenged the panel. In reply I would say that, in our civil practice, and in the selection of jurors, no challenge to the panel is allowed, but is prohibited according to the maxim, *Expressio unius exclusio alterius. Territory* v. *Deegan*, 3 Mont. 383; *Dudley* v. *Mayhew*, 3 N. Y. 9.

The statute says, in sections 248–249 of the Civil Practice Act, that challenges shall be for the following causes, and then enumerates them.

There is certainly no constitutional or organic law providing for the *manner* of selecting jurors, or the right of challenge to an individual juror, except that in criminal cases the defendant is entitled to his peers and those who are not prejudiced against him. Section 248, *supra*, provides in express terms that "the challenge shall be to individual jurors, and shall be either peremptory or for cause;" and then section 249 enumerates the causes. This has not been done in this case by counsel for defendants.

Admit that the challenge was good to the panel, the exception does not state wherein the jury was illegally drawn, nor specify in what consisted the illegality of the jury. Nor does the record show defendants had to exhaust any peremptory challenge upon any of said jurors; nor does the record show that any of said jurors so challenged brought in the verdict in this cause; nor does it show under what law the jurors for the term were drawn. They must be selected by the county commissioners, at least twenty days before the term, and they may have

been selected thirty days before the term; and the last act of the legislature had not gone into effect for at least four days after its passage, and these jurors must have been selected before its passage and approval. Without this construction there could have been no jury for the term of court at which this cause was tried. For this purpose, as to when this law went into effect at Deer Lodge, the court will take judicial notice of the distance to said place.

As to effect of no peremptory challenge being made, see *Taylor* v. *Western R. R. Co.* 45 Cal. 329.

The third error claimed by defendants' counsel is that the court erred in giving instruction No. 9 at the request of respondent, the exception to Nos. 6, 8 and 12 being waived. If this instruction would be good under any state of facts that could possibly arise from the pleadings in this case, the court will not reverse the case.

We are satisfied that the instruction is correct because it provides a mode and rule by which the jury could justly compensate the plaintiff for the injuries to his mind and body, as charged in the complaint.

It seems to me that it is "a distinction without a difference," in a case of this kind, to attempt to separate the bodily and mental suffering of the party injured. But even that has not been done in the instruction No. 9 given by the court and assigned as error. In this instruction the court uses this language as to general damages: "*Assess the same in such sum* as will *compensate him for the injury received.* And in so doing may take into consideration his mental *and* bodily pain *and* suffering from the *time* of the injury to the present time, and what it is likely to be in the future; the inconvenience to him by being deprived of his leg and loss of time, and inconvenience attending to business generally."

To analyze the instruction, it means that the jury should compensate for the injury up to the date of trial, and then estimate as to what it would be in the future.

They could not say what it would actually be, because they cannot predetermine how long a man or the plaintiff may live. But they may *estimate*, as stated in the instruction, what it will *likely be*. This is as near correct as human judgment can go towards the future.

Let us suppose that the plaintiff sat before the jury, his leg having been amputated; suppose he had to hobble into the witness stand on crutches; suppose that he stated that he had been injured a year or more before that date, and that the splinters of bones from his wound were continually obtruding, and passing through the flesh, and that the wound had not healed and probably never would, as appeared from his statement and the appearance of the limb itself. Could not a jury as easily estimate his future damages as his past? The only difference would be that the jury could not tell how long the party would live. They can *only estimate* and not arithmetize. The main objection, therefore, being on account of the want of evidence to support the instruction, the error assigned must fail of its mark, because we have no evidence, in the language of the statute, to "explain the instruction" or to show its applicability.

The authorities are uniform that this instruction is correct, when the damage to mind and body are united or estimated together. See *Giblin* v. *McIntyre*, 2 Utah, 386, in which the instruction in this case was given nearly in the same language and with the same scale to weigh the damages. This case was appealed to the supreme court of the United States, and affirmed, as I am informed, though not yet reported. *R. R. Co.* v. *Arms*, 1 Otto, 495; *Penn. & Ohio Canal Co.* v. *Graham*, 63 Pa. 290; 3 Am. Rep. 549; *Jacob Kann* v. *Stark*, 1 Saw. (U. S. C. C.) 547; *Seger* v. ——, 22 Conn. 298, approved in 27 Conn. 293; *Ill. Cent. R. R. Co.* v. *Bowen*, 5 Wall. (U. S.) 90; Sedgwick on the Meas. of Damages, sec. 648, note 2; Redfield on Railways, 576; Shearman & Redf. on Negligence, secs. 662, 663, 606; *Peck* v. *Niel*, 3

McLean, 22; *Williamson* v. *Western Stage Co.* 24 Iowa, 171; *Higley* v. *Gilmer et al.* 3 Mont. 90; 27 Am. Rep. 215; *Johnson* v. *Wells, Fargo & Co.* 6 Nev. 224.

This court cannot tell but that the injury was wilful and malicious, and that evidence of that character was admitted without objection.

The replication charges such to be the case, when the defendants seek to shelter themselves under the plea, "I could not help it."

APPELLANTS' BRIEF IN REPLY.

Sections 248 and 249 of the Civil Practice Act relate to challenges to individual jurors, and do not take away or affect the right of challenge to the panel, as was done in this case. The doctrine of "*Expressio unius exclusio alterius*" has no application. 13 Wall. 434. None of the causes for challenge mentioned under the different subdivisions of section 249 relate in any way to the mode of drawing, summoning and impaneling the jury, but all relate to the qualifications of the individual juror as to bias, etc. The challenge in this case was to the panel, as not having been drawn and impaneled in obedience to law. Record, p. 000.

If the statutory requirement contained in section 246 of the Civil Practice act, or the same section as amended in 1881 (Session Laws, p. 58, sec. 2), is not followed by the court or officers charged with the duty of selecting jurors, there is no other mode of reaching the error but by challenge. Whether section 246 was in force at the time of the amendment of 1881 is immaterial, as neither was acted on by the court in selecting the jurors under venires 2 and 3.

The case of *Taylor* v. *Western R. R. Co.* 45 Cal. 329, cited by respondents, only decides that a party is not obliged to challenge peremptorily with a less number than twelve jurymen in the box. Upon the correctness of the ninth instruction given for plaintiff, the supposi-

tion propounded by respondents does not cure it, if it is erroneous. It of necessity left the jury to guess or speculate as to what the injury " was likely to be in future," instead of confining them to such damages as were actually proven. It substituted the opinions of jurors for proofs.

The case of *Milwaukee R. R. Co.* v. *Arms,* 1 Otto, 489, only decides that exemplary damages may be awarded when the carrier is guilty of wilful misconduct or reckless indifference, causing injury; that the case before the court was not one of that kind, and for this reason the cause was reversed on account of an erroneous instruction authorizing the jury to award exemplary damages. The case, if it has any bearing, is an authority in favor of appellants, rather than respondents.

The case in 1 Sawyer, 588, was a case growing out of the infringement of a patent right, and cannot possibly have any bearing on the case at bar; besides it does not instruct the jury that in arriving at a verdict they may estimate what the future damages are "likely to be."

The same is true of the case in 63 Penn. 299.

The cases cited from 22d and 27th Connecticut were cases against towns for injuries received from falling bridges. They decide that juries, in estimating damages, may take into consideration the mental and physical suffering of the plaintiff, but do not hold that they may speculate as to future suffering, or award damages for suffering "likely" to be endured but not proved.

The case in 5 Wall. 90, was an action brought by an administrator for an intestate killed by an accident. It was under a statute which fixed a minimum amount which the jury could award in cases of that kind, and Justice Nelson, speaking for the court, says there is no fixed rule for computing damages in case of personal injuries, but it must be left largely to the discretion of the jury. This does not militate against the proposition that the ninth instruction, as to future damages, was wrong.

The case in 3 McLean, 22, decides that where great recklessness was shown on the part of the carrier or his agent causing the injury, the jury might award exemplary damages.

In the case in 24 Iowa, 172, the court held that exemplary damages might be awarded when the evidence showed fraud, malice, gross negligence or oppression on the part of defendant.

The case in 6 Nev. 225, also cited in appellants' brief, holds that pain of mind is not an element of damage, considered as distinct from bodily suffering, and says nothing in regard to future suffering, either mental or bodily.

The case of *Higley* v. *Gilmer*, 3 Mont. 90, is to the same effect. In this case the court expressly instructed the jury that, there being no evidence of wilful injury or recklessness, they could not award exemplary or punitive damages. See —— instruction.

The ninth instruction was the only instruction which the court gave in regard to damages for future suffering, and, whether the remaining instructions were right or wrong, they did not correct the effect of that instruction, if it was erroneous.

REPLY TO ROBINSON'S BRIEF.

The case of *The People* v. *Welch*, 49 Cal. 174, arose on the construction of a statute, and holds that when the court improperly directed the coroner to serve a special venire, the defendant could not take advantage of it by a challenge to the panel.

The case in 6th Wisconsin only holds that, when one of the jurors summoned was on the previous jury, it was not ground of challenge to the array.

The case in 35 N. Y. 129, is an authority for the appellant rather than respondent. In that case the court say: "The officers whose duty it was to attend the drawing (for the jury) were clearly guilty of gross neglect of duty,

and doubtless are liable to punishment therefor. The question still arises whether any injury has resulted to the prisoner or he has been prejudiced thereby. If we could see that by any possibility this neglect of duty on the part of these officers could have changed the panel, or in any manner have produced any different result, we might hesitate whether the prisoner should not have a new trial. It is apparent from the statute that the officers enumerated were but silent spectators to the drawing of the names from the jury box; *their presence, therefore, would not and could not have changed a name drawn.* And their authentication of the drawing, although required by the statute, is of but little moment if the names actually drawn were then returned on the panel." Vol. 35, p. 129.

The case at bar is very different. Here the judge and sheriff of the county made up a list of the names contained in venires Nos. 2 and 3; they were not spectators merely of the drawing, like the officers mentioned in the New York case, but it was to their agency and acts that the list of persons mentioned in those two venires were drawn and summoned as jurors. And it cannot be said of the list of persons selected by them, that they were the same persons who would have been drawn and summoned had the clerk of the court resorted to the box prepared by the county commissioners, as required by section 2 of the act of February 23, 1881, or, if that act was not at the time in force, then as required by section 264 of the Code of Civil Procedure.

In the New York case, the jury drawn and summoned was the same that it would have been if the officers mentioned had done their duty and witnessed the drawing; in the present case the presumption is that they were different. The remark of the New York court, therefore, that they would hesitate about granting a new trial if they could see that the result would have been different if those officers had been present and done their duty,

has special application and force to this case, and is a direct authority in our favor.

The proposition that the drawing and impaneling of jurors is regulated by statute is conceded; but it does not follow if the statute in this respect is disregarded or over-looked, that persons affected thereby are without remedy. And a challenge to the panel is not taken away because challenge for cause or peremptorily to individual jurors is given.

The cases in 46 and 49 California were challenges to the grand jury, made under a special statute, and do not apply.

The two cases cited in 13 Wall. 290, and 13 Nev. 139, only decide that a verdict should not be set aside simply because some expressions of the court in its charge to the jury might, in some particulars, when considered apart by themselves, be susceptible of verbal criticism, which, when taken and considered with other portions of the charge, could not have misled the jury.

The objections to the ninth instruction given by the court at the instance of plaintiff is not to its verbiage, but its substance. The substance of the charge is that the jury may award damages for such future pain and inconvenience as the plaintiff is "likely" to suffer from his injuries — not what it has been proven he must suffer. In other words, it substitutes conjecture for proof, and no other part of the charge given counteracts the effect of that instruction; and the jury in arriving at the large verdict they did, it is fair to presume, awarded damages for future as well as past suffering.

The case of *Curtis* v. *Rochester R. R.* 18 N. Y. 542, is directly in point as to the error of such an instruction.

Conger, J. This is an appeal from the second judicial district, Deer Lodge county, Montana territory. The action was for injuries received by the plaintiff while a passenger on defendants' coach, on the 30th of June, 1879,

between the towns of Deer Lodge and Helena, and plaintiff recovered a judgment of $17,167 and costs of suit.

From this judgment the defendants bring their appeal to the supreme court and assign as error: First. That the court erred in overruling their demurrer to plaintiff's amended complaint. Second. That the panel for the jury was not drawn in accordance with the law. Third. Exceptions to instructions. Fourth. Excessive damages; and fifth. That the evidence was insufficient to justify the verdict.

With regard to the fourth and fifth assignments of error, they were eliminated from the cause by the order of this court, made at the August term, when the court by order struck out from the statement the evidence therein contained, and are, therefore, not considered in this opinion.

Referring to the assignments of error in their order, there is, first, the demurrer of defendants to plaintiff's amended complaint, which was general — that the complaint did not state facts sufficient to constitute a cause of action.

The complaint sets out that the defendants were common carriers of passengers for hire from Deer Lodge to Helena; that on the 30th day of June, 1879, plaintiff took passage on one of defendants' coaches and prepaid his fare; that while he was in transit the said coach was, by and through and by reason of the negligence and carelessness and mismanagement of said defendants and their servants, and by reason of the failure of defendants to provide suitable, safe and gentle horses, and a suitable and competent driver for the horses, so that the horses to said coach becoming unmanageable, and one of the same jumping and throwing itself on the pole of the coach, thereby breaking the same, thrown and placed in such a condition as to imperil the safety of plaintiff.

So far the complaint sets forth a state of facts upon which the plaintiff could have relied if the injury com-

plained of had happened. But it will be observed that this was not the case. The complaint continues: "And to render it apparently unsafe for plaintiff to longer remain on said coach; that he, being actuated by just fear of bodily injury by longer remaining thereon, jumped from said coach, and, in so doing, one of plaintiff's legs was fractured, bruised, broken," etc.

Thus the plaintiff declares that the proximate cause of the injury he sustained was his own action. In so far the complaint shows that the plaintiff contributed to the injury, and avers his reason for so doing — that it was apparently unsafe for him longer to remain on the coach; that he, being actuated by great fear of bodily injury by longer remaining thereon, "jumped from said coach," etc.

As the plaintiff has heretofore averred that the proximate cause of the injury he sustained was the result of his voluntary act in jumping from the coach, placing it on the ground of apparent danger, and actuated by his great fear of bodily danger, is he not also required to first state, and then prove, that in the doing of this he acted with a reasonable degree of care and prudence?

Without entering into the question whether the plaintiff shall, in the first instance, be required to allege that he did not contribute, by his own negligence, to the injury complained of, we find in this case that the proximate cause of injury was the act of complainant.

The question to be considered is, were the grounds of plaintiff's action as set forth in the complaint sufficient to warrant the act, viz., "apparent danger and great fear of bodily injury?" These are the conditions that present themselves to plaintiff's mind; but is the condition of plaintiff's mind to be taken as the true rule of action? Is it not rather the mental condition of a reasonable and prudent man in similar circumstances? We think this the true rule, and that plaintiff, having asserted that the proximate cause of his injury was from his own act, he should then be held to prove that in thus acting he did ex-

ercise that degree of care and prudence that a reasonable person would have done in like circumstances. This is nowhere stated in the complaint, and we are left to conjecture as to that important factor in the cause.

Generally the proof of the injury furnishes the proof or raises a strong presumption of negligence on the part of the carriers, as in cases where the stage or vehicle in which the passenger is being conveyed is overturned. But not every accident raises such a presumption; and when, as in the present case, the passenger is injured by his own act of jumping, no presumption of negligence arises from the accident itself.

This view of the law is set forth and referred to in 12 N. Y. 236; 18 N. Y. 248, 540; Shearman & Redfield on Negligence, sec. 43 and cases there cited; 33 Barb. 414; 49 Cal. 253.

The complaint did not state a cause of action, and defendants' demurrer thereto should have been sustained by the court.

The second ground of error relied on is the order of court overruling the defendants' challenge to the jury. The statement is as follows: After the jury which tried this cause had been called and examined on their *voir dire*, but before they were sworn to try the cause, the defendant interposed a challenge to the jury, which challenge was overruled by the court, and the jury thereupon sworn to try the cause. To the order of court overruling said challenge, the defendants, by their counsel, then and there excepted and filed their bill of exceptions, which was allowed by the court, and was as follows, to wit:

"Now come the defendants by their attorneys and make this their challenge to the jury now here impaneled to try this cause, and as grounds of challenge allege: 1st. That said jury was not drawn or summoned in accordance with law. 2d. That said jurors, and the different jurors composing it, have not been drawn, summoned or impaneled in obedience to law. 3d. Sets out that

some jurors which were drawn were excused by the court; but this is not insisted on by counsel, and is not considered by the court. 4th. That after the excusing of the jurors named, the judge of this court and sheriff of Deer Lodge county deposited certain names in a box for the purpose of drawing therefrom to complete the panel of the trial jury to serve at the present term of court, and the clerk of this court, on the 24th day of February, 1881, drew therefrom the names of certain persons (names omitted in this opinion), and on said day issued a *venire* under the seal of the court, being *venire* No. 2; and the persons named were afterwards, in pursuance of said *venire*, summoned as trial jurors, and now form a part of the regular panel of trial jurors of the present term of this court. 5th. That the persons so drawn, or summoned, were not drawn or summoned in pursuance of law, and are incompetent to act and serve as trial jurors in this cause."

It is again alleged that on the 28th day of February, 1881, the judge of the court and sheriff of Deer Lodge county deposited certain other names in a box for the purpose of having the names so deposited, or a part of said names, drawn therefrom to complete the panel of said trial jurors; that the clerk issued a *venire* for some of them, and they were summoned and formed part of the panel; that on the 9th day of March, 1881, a jury to try this cause was drawn from a box containing the names of the jurors summoned under the *venire* mentioned; that at the time said box contained the names of only nineteen persons; that the said nineteen persons did not constitute a full and lawful panel of trial jurors for the said district court, said lawful panel requiring twenty-four persons, summoned in conformity to law, to constitute the full panel of trial jurors.

The following order of court was made and entered on the said 24th day of February, 1881: "It appearing to the court that the number of trial jurors in attendance is

insufficient for the transaction of the business thereof, and that a sufficient number of names cannot be drawn from the regular jury box containing the names selected according to law by the county commissioners to constitute a *venire*, without causing a great delay and expense in the service thereof: It is ordered that the regular jury box be set aside, and that twelve names of persons having the qualifications of trial jurors, to be selected by the judge of this court and the sheriff of Deer Lodge county, be placed in a special jury box, and ten names be drawn therefrom by the clerk in open court under the direction of the judge, and that a *venire* No. 2 issue therefor, returnable at two P. M., instant."

A similar order was entered on the 28th day of February, 1881, when other names were placed in a special box and drawn to complete the panel of trial jurors for the term.

The right to a trial by jury is an undisputed right, and in order that this right may be preserved to parties interested, it is a self-evident proposition that the law of their procurement must be observed. This form of trial is by the country, and those serving must be selected from the duly qualified citizens of the county. For this reason the county commissioners shall, at least twenty days prior to the commencement of any term of court, select the names of one hundred persons, lawfully qualified to serve as jurors, from the assessor's books, and the names so selected shall be placed in a box, from which they shall alternately draw the names of thirty persons, who shall be summoned, etc. See sec. 773 of fifth division, Revised Statutes.

At the commencement of any term, the judge shall examine the jurors who appear, and reduce the number to twenty-four, which in law is and is called the panel. The persons selecting the jurors are official, occupying an important and responsible office. They are selected and summoned before the term of court, whereby the

parties may have notice of the jurors, of their sufficiency or insufficiency, characters, connections and relations, that so they may be challenged upon just cause. Therefore any party to a suit has the right to have before him, from which to select a jury, a full and lawful panel, and in section 246, Revised Statutes, the manner of filling a panel, when a vacancy occurs, is laid down. But when by reason of challenge, in the selection of a jury for the trial of any cause, or by reason of the sudden sickness or absence of any juror for any cause, the regular panel shall be exhausted, the court may direct the sheriff to summon as many persons as may be necessary to complete the jury for the pending trial. But this is not intended to, nor does it, change the law or the right of a suitor to have a full and complete lawful panel from which to first select the jury.

It is true, the law in force at the time the county commissioners selected the trial jurors required them to select but eighteen. This they did; but at the time of the objection taken in this cause, the law was as heretofore stated.

It was the right of the parties at the commencement of the trial to have a full panel of twenty-four jurors from which to select a trial jury. This not having been done — the court and sheriff having selected names from which to draw a jury, and a lawful panel not being present, — it follows that it was error in the court to overrule appellant's challenge to the array. The cause is therefore reversed, and remanded for a new trial.

*Judgment reversed.*