MERRITT, APPELLANT, *v.* McNALLY ET AL., RESPONDENTS.

[Submitted June 24, 1893.    Decided March 19, 1894.]

NEGLIGENCE—*Building inspector—City ordinance.*—A city ordinance requiring a building inspector to inspect buildings in course of construction and to "see" that they are being constructed as provided by the ordinance imposes upon him the duty of enforcing from builders obedience to its requirements, and for a neglect of this duty he is liable in damages to one who sustains injury by the fall of a building constructed in a careless and grossly negligent manner.

SAME—*Pleading—Defense.*—In an action for damages against a city officer for negligence of a duty prescribed by ordinance, an objection to the complaint

that it does not show that the officer had the means of enforcing the provisions of the ordinance will not be sustained on demurrer, but the sufficiency of such want of means as a defense may be determined upon an answer.

*Appeal from First Judicial District, Lewis and Clarke County.*

ACTION for damages. Judgment was rendered for defendant below by HUNT, J., on demurrer. Reversed.

Statement of the case by Mr. Justice DE WITT:

This action is against the defendant McNally as building inspector, and against his sureties upon his official bond as such inspector. Separate demurrers of McNally and his sureties, respectively, were sustained. Judgment was thereupon entered for defendants, from which the plaintiff appeals. The question being whether the complaint sets forth a cause of action, it will be necessary to recite the principal points in that pleading, which are as follows: The city of Helena is a municipal corporation. This city, under the acts of the legislative assembly, has power to regulate, by ordinance, the construction of buildings within the city. The city council passed an ordinance entitled "Building," known as chapter 10 of the Ordinances of the City of Helena. The whole ordinance, which is a lengthy one, is pleaded in the complaint. Section 1 of the ordinance provides for the appointment of an inspector of buildings, who shall be a practical builder, and shall hold his office for the term of one year, etc. The defendant McNally, prior to the acts complained of in the complaint, was duly appointed building inspector, and was qualified to act as such at the time mentioned in the complaint. That ordinance further provides: "When any person or persons, or corporation, shall be desirous of erecting, repairing, changing, or altering any building, buildings, or structure within the limits of the city of Helena, he or they shall make application at the office of the building inspector for a permit for that purpose, and shall furnish said inspector with a written statement of the proposed location, dimensions, and manner of construction of the proposed building, buildings, or structure, and the materials to be used, and a plan of the plumbing, draining, and ventilation, together with plans and specifications of the proposed building, buildings, or

structure, which shall be delivered to said building inspector, and remain in his custody a sufficient length of time to allow the necessary examination to be made of the same, and, if required by the inspector, a copy of said plans and specifications shall be filed in the office of said inspector of buildings. After which, if it shall appear to said inspector that the laws and ordinances of the city are complied with, he shall give the permit asked for, upon the payment of the following prescribed fees: . . . . Blank forms for the detailed statement as herein required may be obtained at the office of the inspector of buildings for the applicants to fill out, describing location of proposed structure, number and height of stories, size of joists, and distance apart, dimensions of supporting ironwork, for what purpose the building, buildings, or structure is designed, and such other information applicable to the proposed improvement, which statement so properly filled out the owner or owners, his or their architects or agent, shall sign, with the agreement contained in said detailed statement that he or they will, in all respects, construct the work in accordance with such detailed statement, plans, and specifications, and in compliance with the laws and ordinances of the city of Helena, and it shall not be lawful to proceed to construct, alter, or repair any building, buildings, or structure within the limits of said city of Helena without such permit."

Section 4 of that ordinance further provides as follows: "The said inspector shall keep an office in the city hall, or such other place as shall be provided by the city council, where it shall be the duty of said inspector to keep a record of all permits issued, which shall be regularly numbered in the order of their issue, and also a record of the statements upon which permits are issued. He shall also keep a record of, and report to the common council, a full and complete register of the number description, and size of every building erected in the city during his term of office, of what material constructed, with the aggregates of the number, kind, and costs of all buildings, and the sanitary condition of all buildings."

Section 5 of the ordinance is as follows: "It shall be the duty of every inspector appointed under the provisions of this act to visit and inspect each and any house or houses, build-

ing or buildings which may be in the course of erection, construction, or alteration within the limits of the city, and to see that each house or houses, building or buildings are being erected, constructed, or altered according to the provisions of this ordinance, and all acts and ordinances in force in said city, and the manner adopted for the security thereof against fires, and the safety of the occupants; that the materials used are suitable for the purpose, and that the work is done in a substantial and workmanlike manner, and is of sufficient strength and solidity to answer the purpose for which it is designed, and before the foundations are laid he shall examine the trenches dug for the same, and be fully satisfied that the soil or substratum is sufficient for the structure, or, at least, the best that can be obtained, and should the nature of the soil be such, and the work of sufficient magnitude as to require piling, flagging, or lagging, the same shall be done; *provided,* that it may be deemed necessary by the inspector; that his visits and inspection shall be repeated from time to time during the erection, construction, or alteration of such house or houses, building or buildings, until the walls shall have been completed and the same inclosed, when his duties shall terminate. He shall, on application for that purpose, furnish the owner or owners, contractor or contractors, his certificate that the said house or building is, in all respects, conformable to law and properly constructed."

In later sections of the ordinance there are detailed provisions as to the strength of walls of certain heights, and for the use of various kinds of materials, which provisions need not be recited in full.

Section 57 provides as follows: "Before the erection, construction, or material alteration of any building in the city of Helena the owners, architect, or builders shall submit to the inspector of buildings full specifications and plans of the proposed construction or alteration, and a detailed statement in writing. Such statement shall give: . . . . The owner, his agent, or architect shall then sign an agreement that he will construct the work in accordance with the description as set forth in such specifications, plans, or detailed statement, and all matters and things connected with such construction or altera-

tion of any building shall be done in strict compliance with the building ordinance. Thereupon, the inspector of buildings shall issue a permit to make such construction or alteration, upon the payment of the fees hereinbefore mentioned in this article, and it shall not be lawful to proceed to construct or materially alter any building without such permit."

In section 68 we find the following: "Any person who shall violate any of the provisions of this ordinance, where no other penalty is provided, shall be subject to a fine of not less than ten dollars, nor exceeding one hundred dollars, for each and every offense."

The complaint then goes on to allege that on the 5th of August, 1891, the plaintiff was the owner of, and in possession of, certain premises within said city, describing the premises. That on or about the last of March, 1891, on premises adjoining those of plaintiff, excavations were made for a building foundation, and from that time on, up to and including said fifth day of August, 1891, a two-story building of brick and stone was in course of erection and construction.

That it was the duty of said McNally, by virtue of his office as building inspector, to see that said building was erected in accordance with the laws and ordinances relating to the construction of buildings in said city, and to visit and examine said building, and see that the walls thereof conformed to the provisions of said ordinance. That said McNally wrongfully disregarded his duty, and failed and neglected and refused to visit and inspect said building, although he well knew that it was in process of erection. That he wrongfully neglected and failed to see that said building was being constructed according to the provisions of said chapter 10, entitled "Building." And that he neglected to see that the building was being constructed in such a manner as to insure the safety of the occupants of said building, and of the plaintiff's adjoining premises.

Then follows detailed allegations of the building inspector's negligence to see that certain things were done about said building in accordance with the sections of the ordinance which have been heretofore cited fully. That, by reason of defend-

ant's negligence, the walls of the building were constructed in an unskillful, careless, and grossly negligent manner.

Then follow details showing wherein was the negligence of construction. That by reason of said negligence, on the 5th of August, 1891, the building in course of construction fell upon the dwelling-house of plaintiff, and crushed and demolished the same.

Then follow allegations of the particulars of the damage, including the destruction of furniture, the killing of plaintiff's infant child, the exposure of his wife to the inclemency of the weather, the contracting of physicians' bills, funeral expenses, etc.

The demurrers of the separate defendants were upon the ground that the complaint did not state facts sufficient to constitute a cause of action against the defendants.

*Henri J. Haskell,* and *E. L. Knowles,* for Appellant.

When one sustains an injury through the misfeasance or nonfeasance of a public officer, who acts, or omits to act, contrary to his duty, the law renders him liable in a civil action to any person thereby injured. (*Adsit* v. *Brady,* 4 Hill, 630; 40 Am. Dec. 305; *Nowell* v. *Wright,* 3 Allen, 166; 80 Am. Dec. 62; *Hover* v. *Barkhoof,* 44 N. Y. 114; *Smith* v. *Wright,* 24 Barb. 172; Shearman & Redfield on Negligence, 3d ed., § 168, p. 209, and cases cited in notes; *Bennett* v. *Whitney,* 94 N. Y. 302, 306; *Robinson* v. *Chamberlain,* 34 N. Y. 389; 90 Am. Dec. 713; *Governor* v. *Dodd,* 81 Ill. 162.) When the law defines the duties of a public officer his sureties are responsible for the faithful performance of such duties, and are liable in case of his misfeasance or nonfeasance in office. (*Smith* v. *Lovell,* 2 Mont. 332; *Maddox* v. *Rader,* 9 Mont. 126, 135; *Van Pelt* v. *Littler,* 14 Cal. 198, 199; *Forgarty* v. *Finlay,* 10 Cal. 240; 70 Am. Dec. 714; *McComb* v. *Reed,* 28 Cal. 281; 87 Am. Dec. 115; *Ziegler* v. *Commonwealth,* 12 Pa. St. 227; *Missoula County* v. *Edwards,* 3 Mont. 60; *Governor* v. *Ridgway,* 12 Ill. 19.) Section 4 of chapter 10, entitled "Building," of the Revised Ordinances of the city of Helena, page 89, is mandatory, and has a penal provision thereto attached. Section 5 of said chapter is also mandatory, and does not depend

for its construction upon the provisions of section 4. It will be seen that section 15 of chapter 7 of the Revised Ordinances of the City of Helena, page 77, is mandatory, but has no penal provision attached thereto. Section 2, page 71, of said chapter, is also mandatory. The individual cannot sue for the reason that the grievance of one is the grievance of all. Not so when the building inspector fails to do his duty, and damages thereby accrue to a citizen. The requirements of said section 4 are such that the act of erecting a building within the city limits is constructive notice to the inspector, but in this case the pleadings show that the inspector had express notice of the construction of the building, and willfully neglected to perform his duty. There is no ambiguity in this section, and the language used is simple and clear. When the meaning of the statute as it stands is clear, courts have no power to insert qualifications. (Sedgwick on Construction of Statutory and Constitutional Law, p. 326, par. 1; *Supervisors of Niagara* v. *People,* 7 Hill, 511; *Corbett* v. *Bradley,* 7 Nev. 106, 108; *Smith* v. *Williams,* 2 Mont. 198.) The power of construing a statute strictly or liberally only exists in those cases where the intent is ambiguous and the effort to arrive at it hopeless. (Sedgwick on Construction of Statutory and Constitutional Law, p. 326, par. 2; *Koch* v. *Bridges,* 45 Miss. 247; *Smith* v. *Williams,* 2 Mont. 199, 201; *Bidwell* v. *Whitaker,* 1 Mich. 469, 480.) The means of arriving at the intent are to be found in the statute itself. No extrinsic facts are to be taken into consideration. (Sedgwick on Construction of Statutory and Constitutional Law, 325, note; *Daniels* v. *Andes Ins. Co.,* 2 Mont. 78; Endlich on Interpretation of Statutes, § 431, p. 607.) Effect, if possible, must be given to every word and clause of a statute. (*Attorney General* v. *Detroit etc. Plank Road Co.,* 2 Mich. 139, 142; *Bonnet* v. *San Francisco,* 65 Cal. 231; *Ex parte Reis,* 64 Cal. 240; *Hyatt* v. *Allen,* 54 Cal. 353, 359.) Where words have a technical and a popular meaning courts will accord to them their popular meaning. (*Weill* v. *Kenfield,* 54 Cal. 111, 113; *In re Maguire,* 57 Cal. 604; 40 Am. Rep. 125; *Appeal of Houghton,* 42 Cal. 52.) The requirements of a statute can never be dispensed with as being directory when the act or omission of it can, by

any possibility work advantage or injury, however slight, to any one affected by it. (*Koch* v. *Bridges*, 45 Miss. 247; *Looney* v. *Hughes*, 30 Barb. 605, 607, 608; *People* v. *San Francisco*, 36 Cal. 603; *Hines* v. *City of Lockport*, 5 Lans. 21; *Territory* v. *Board of Commissioners*, 8 Mont. 409.) An officer acting under his oath of office and bond is required to understand thoroughly the duties, objects, and responsibilities of his office, and to at all times know and contemplate the result of a violation of his duties. So, if a party contracts with reference to a law or ordinance, the law itself becomes a part of the contract, and he is bound thereby. (*Matoon* v. *Eder*, 6 Cal. 59.) The condition of the bond is that he shall and will faithfully and impartially discharge all duties of inspector of building in the city of Helena, and that in all things he will faithfully discharge the duties of said office. Such a condition in a notary's bond is the only proper condition to be inserted. (*Tevis* v. *Randall*, 6 Cal. 632; 65 Am. Dec. 547.) Failure of a person to perform a duty imposed upon him by statute or other legal authority should always be considered evidence of negligence or something worse. (Shearman & Redfield on Negligence, §§ 13 *a*, 54 *a*, p. 69; *Siemers* v. *Eisen*, 54 Cal. 420.) Nor is the fact that the defendant contracted faithfully to perform his duties, not to the plaintiff, but to the government, any defense, for the action is founded, not on the contract, but on breach of duty. (*Henly* v. *Mayor of Lyme*, 5 Bing. 107, 109; *Farrant* v. *Barnes*, 11 Com. B., N. S., 553; *Marshall* v. *York etc. R. R. Co.*, 11 Com. B. 655; *Burnett* v. *Lynch*, 5 Barn. & C. 589, 591, 593; *Winterbottom* v. *Wright*, 10 Mees. & W. 109.) A general power, granted by charter or by the legislature, includes all incidental powers necessary to the carrying out of the general power. (*Gray* v. *City of Brooklyn*, 7 Hun, 633; *Mayor etc.* v. *Hoffman*, 29 La. Ann. 656; *City of Olympia* v. *Mann*, 1 Wash. 389; *Baumgartner* v. *Hasty*, 100 Ind. 579, 580; 50 Am. Rep. 830; *Hubbard* v. *Town of Medford*, 20 Or. 315; *Cronin* v. *People*, 82 N. Y. 318; 37 Am. Rep. 564; *Folmar* v. *Curtis*, 86 Ala. 354; 1 Dillon on Municipal Corporations, § 90, p. 148.)

*Word, Smith & Word,* for Respondents.

I.   Nowhere does the complaint allege that an application was made or a permit granted for the construction of the building, the falling of which, it is alleged, caused the injury. The plans and specifications, which under sections 2 and 57 must be submitted to the inspector, must contain a description of the materials to be used in the proposed structure, its purpose and design, its proposed location, and the number of its stories.   The performance of the duties set forth in section 5, on the part of the inspector, plainly contemplates the performance of the requirements of sections 2 and 57 on the part of the builder.   In other words, the inspection of " each and every building," made necessary by section 5, embraces only those buildings for which a permit has been obtained.   If this be so, there was, then, no duty resting upon the defendant officer to inspect the building mentioned in the complaint, and for his failure to act he is not liable.

II.   The duty of the officer must be entire, absolute, and perfect, and he must be clothed with the ability to perform it. (*Nowell* v. *Wright,* 3 Allen, 266; 80 Am. Dec. 70; *Bartlett* v. *Crozier,* 17 Johns. 450; 8 Am. Dec. 428; *Hover* v. *Barkooff,* 44 N. Y. 113; *Weed* v. *Ballston,* 76 N. Y. 329; Shearman & Redfield on Negligence, §§ 172, 173; *Bennett* v. *Whitney,* 94 N. Y. 302; Mecham on Public Offices, § 669.)

III.   The alleged omission of the inspector to act was not the proximate cause of the injury complained of.   It is not enough for the plaintiff to show an injury, but he must go further and show that the injury was caused by the negligence of the defendant.   (*State* v. *Harris,* 89 Ind. 363; 46 Am. Rep. 169; *Eslava* v. *Jones,* 83 Ala. 139; 3 Am. St. Rep. 699; *Loop* v. *Litchfield,* 42 N. Y. 351; 1 Am. Rep. 543; *Anthony* v. *Slaid,* 11 Met. 290; Mecham on Public Offices, §§ 676, 680, and cases.)   Would an inspection by the officer in this case have averted the injury complained of?   Take the case of a building which is going up under a permit issued and an agreement signed to properly construct the same.   The inspector sees during his visits that the architect is not following the plans and specifications submitted.   It may be that the variation is a material one; that if allowed to continue it may weaken the

building and render it unsafe.  Will it be contended that the mere presence of the inspector of buildings, or his visits, however often repeated, would lessen or abate the danger?  If it will not, then this officer is not liable beyond his duty to condemn the structure by refusing a certificate for the same, unless under this ordinance he had the power, and it was made his duty, to abate the defective building.  The exercise of a positive power, the ability to condemn and destroy, was the remedy in such a case.  Counsel for appellant seems to see in section 5, in the use of the words "visit and inspect and see" that each house and building conforms to the provisions of the building ordinance, the conferring upon the inspector such a power, but respondents contend that a comparison of section 5 with the other sections of the ordinance, and a construction of the above words in their usual and popular meaning, will lead to the conclusion that no such power was, or was intended to be, conferred.  The powers of the inspector are in their nature negative.  He may refuse to grant a permit in the first instance; he may refuse to issue a certificate that the building is properly constructed in the second.  Nor is it anywhere in this ordinance made his duty to notify the council, or other officer or body, that a building is going up for which a permit has not issued, or that an architect is not following in the construction of a building the plans and specifications submitted.  In this respect the ordinance may be said to be defective, but if so, the blame cannot fall upon the inspector.  To give to section 5 the construction appellant seeks to put upon it is to render it null and void.  Under the charter of the city the power to declare and condemn nuisances is vested in the city council.  Even that body cannot by an ordinance or resolution make that a nuisance which is not so in fact.  (1 Wood on Nuisances, §§ 744; *Hennessy* v. *City of St. Paul*, 37 Fed. Rep. 565; *Yates* v. *Milwaukee*, 10 Wall. 497.)  A further reason that the construction sought to be given to section 5 must be rejected is that it is vesting in an inspector of buildings the functions of a judge, of a jury, and of a police officer.  It is placing the property of the citizens of the city at the disposal of the inspector of buildings.  It is delegating to this officer functions and powers given to the city by the legislature,

which the city holds in trust, and which are not subject to delegation. (15 Am. & Eng. Ency. of Law, 1043, note 1, and cases.)

IV. The duties of the inspector of buildings are known as *quasi* judicial. They are owing solely to the public. For the nonperformance of such duties there is no liability to individuals. (Mecham on Public Offices, § 673; *State* v. *Harris,* 89 Ind. 363; 46 Am. Rep. 169; Cooley on Torts, 2d ed., 444–47; 2 Thompson on Negligence, § 11, p. 822.)

DE WITT, J.—The ground on which the demurrers were sustained in the court below seems to be that, notwithstanding how great the damage may have been which the plaintiff suffered, the defendant McNally was not, by virtue of his official position or otherwise, to be held liable for these injuries. The defendant was a public officer, to wit, building inspector of the city of Helena, and in the pay of the city as such officer. The cause of action attempted to be alleged against him is that, as such officer, he acted so negligently—or perhaps it might better be said, so negligently failed to act—that the damage described in the complaint resulted. Whatever may have been the early rulings upon this point, it seems to be settled, in modern times, that where a public officer is exercising ministerial powers, and where he performs his duties negligently, or where he carelessly or willfully or knowingly fails to perform the duty at all, and from such failure on his part damage results to another, such person so damaged has a cause of action against such officer. (Throop on Public Officers, c. 29, § 724 et seq.; *Raynsford* v. *Phelps,* 43 Mich. 342; 38 Am. Rep. 189; *Hines* v. *City of Lockport,* 50 N. Y. 236; *Amy* v. *Supervisors,* 11 Wall. 136; Shearman & Redfield on Negligence, 324, and cases; *Robinson* v. *Chamberlain,* 34 N. Y. 389; *Hover* v. *Barkhooff,* 44 N. Y. 113, and review of cases; *Adsit* v. *Brady,* 4 Hill, 630; 40 Am. Dec. 305; *Bennett* v. *Whitney,* 94 N. Y. 302; *Nowell* v. *Wright,* 3 Allen, 166; 80 Am. Dec. 62; Bishop's Noncontract Law, § 796.)

It is also held that if an officer of this sort is to be liable for damages, it must appear that the duty imposed upon him was a clear and absolute one. (See cases *supra* and *infra.*)

We will therefore first inquire whether the ordinance of the city purports to impose upon the building inspector the duty with the neglect of which he is charged. At the outset we will endeavor to construe the word "see," as used in section 5. The words are, "and to see that each house or houses, building or buildings, are being erected, constructed, or altered, according to the provisions," etc. The respondent would give to this word "see" a very literal construction. In his view it would seem to mean simply to look at or to observe. On the other hand we think the word is used in the sense of "to cause to be done or accomplished." A parallel case may be observed in section 5, article VII, of the constitution of the state, which reads as follows: "The supreme executive power of the state shall be vested in the governor, who shall see that the laws are faithfully executed." We are satisfied that the word "see," in this case, does not mean simply that the governor shall stand by and look at or observe the laws being faithfully executed, but that this provision of the constitution is in the nature of a command to the governor to require the laws to be faithfully executed, whenever there is need for the interposition of the executive arm. The word "see," as used in the ordinance, is in the sense defined by the "Century Dictionary," in the fifth subdivision of definitions of that word, as follows: "To bring about as a result; superintend the execution or the performance of a thing so as to effect a specified result; make sure; with an object clause with 'that' specifying the result. 'See that ye fall not by the way.' (Gen. xiv: 24.)" We are therefore of the opinion that the use of the word "see," in this ordinance, is the laying of a duty upon the building inspector to require buildings to be erected in accordance with the provisions of the ordinance. It seems to us that any other view of the meaning of the word "see," in this connection, would be a wholly unreasonable one. Therefore, we may conclude that the duty was clearly imposed upon the building inspector to "see" or to require that the building in question was properly erected.

The allegations of the complaint that the building was not properly erected, in accordance with the ordinance, are perfectly clear; also, the allegations are clear that the inspector did not see that the building was properly erected. Respondents here

interpose the suggestion that, even if a duty is imposed upon a public officer, he is not liable for its nonperformance if the law provides him no means for the performance. Cases of bridge and highway commissioners are cited, in which the commissioners had no funds with which to repair the bridge or highway upon which the injury occurred. (Throop on Public Officers, 737, and cases; *Garlinghouse* v. *Jacobs*, 29 N. Y. 297; *Hines* v. *City of Lockport*, 50 N. Y. 236; Shearman & Redfield on Negligence, § 324, and cases; *Nowell* v. *Wright*, 3 Allen, 166; 80 Am. Dec. 62; Mecham on Public Offices, § 669; Cooley on Torts, 399.)

It is contended by respondents that it appears by the complaint that, even if the duty were laid upon the defendant, the building inspector, to require the building to be properly constructed, yet it also appears by the complaint that defendant had no means provided him of performing this duty, and he is therefore not liable, and the demurrer was consequently properly sustained. But we are of opinion that there are allegations in the complaint which dispose of respondent's contention adversely to him. A total and willful neglect of defendant's duty is charged. It was his duty to "visit and inspect" this building (Ordinance, § 5), and to "see"—that is, to require—that it be properly constructed. The defendant not only did not see or require that the building was properly constructed; but he neglected to visit or inspect the building as required by ordinance (§ 5). Moreover, he refused to visit or inspect the building; and, furthermore, he knew that the building was in process of construction, and his neglect and refusal to visit and inspect the building, or to see that it was properly constructed, was wrongful, and with knowledge. By reason of this neglect and refusal of defendant the accident occurred. So that the charge of the complaint is that the ordinance required defendant to perform certain duties, and that he knowingly and willfully not only neglected, but refused, to perform them, and that, as a result of this neglect and refusal, the injury occurred. But it does not appear by the complaint that the defendant had no means by which he could visit or inspect the building, or see that it was properly constructed, nor does it appear by the complaint that defendant was unable so to do. We are

therefore of opinion that this complaint is good on demurrer, and that if it be true that defendant had not the means or the ability to visit or inspect, or see that the building was properly constructed, or was prevented from so doing, the question of the defense of such matter may be determined upon an answer.

The objections to the complaint, which we have discussed, are those presented by counsel. The judgment of the district court is reversed, and the case is remanded, with instructions to that court to overrule the demurrer.

*Reversed.*

PEMBERTON, C. J., and HARWOOD, J., concurring.—In our opinion the complaint is not vulnerable in the points attacked by demurrer, as contended by .respondents' counsel on the argument in this court. The interpretation that the clause of section 5 of the ordinance in question, which provides that "it shall be the duty of every inspector appointed under the provisions of this act to visit and inspect each and any house or houses, building or buildings, which may be in the course of erection, construction, or alteration within the limits of the city, and to see that each house or houses, building or buildings, are being erected, constructed, or altered according to the provisions of this ordinance," lays upon the building inspector no responsible duty of exertion or action in his official capacity, and authority to inspect and demand of builders a compliance with the provisions of that ordinance, or, when "seeing" the same violated, to lay such information before other agents of the city, for the purpose of putting in force the means provided by the municipality for the correction of the violation of its ordinances, is untenable. Such interpretation is neither conformable to the definition of the terms used, as shown by dictionaries of authority, nor in accordance with the common understanding of the force and effect of such a command of law applied to such a subject, or found in context like that under consideration, where, all the way through the ordinance, action is enjoined upon the inspector appointed and compensated to discharge the duties therein prescribed. According to the interpretation of counsel for respondents, the build-

ing inspector might "see" that the ordinance put under his
monitory care was complied with or violated with the same
supine inertia on his part in either case.   Under such inter-
pretation, it would have been quite as well, or perhaps even
better, as attended with less draught on the people's revenue,
and less danger and deception to inhabitants, arising from the
expectation that he would see that any thing was done, for the
city to have appointed a stone or wooden statue, as to appoint
a sentient being, to discharge the duties of building "inspector";
for, if respondents' interpretation of the provisions of the ordi-
nance declaring his duties is correct, whether seeing that the
provisions of the ordinance were obeyed, or being utterly obliv-
ious to that fact, amounted to the same thing, so far as
responsibility on the part of the inspector to exert himself to
demand obedience or cause arrest of violation went, because,
under such interpretation, the inspector might "see" dangerous
structures rise up, in violation of the ordinance, to fall and
destroy life and property, and yet neither demand compliance
with nor report violation of the ordinance to other municipal
authorities, in the attempt, at least, to prevent the mischief by
setting in motion such means as the municipal government has
provided to correct such abuse.   This interpretation is not
according to the common understanding of the effect of such
injunctions of law, as found in the ordinance prescribing the
duty of the building inspector.

   The other point of objection urged against the complaint—
that it does not show that respondent was clothed with the
necessary power, or had at his disposal the means of enforcing
the provisions of said ordinance, or arresting proceedings in
violation of its terms—is not, in our opinion, well taken.
Whatever facts in defense respondent may have to shield him-
self from liability for the injury charged to his negligence
should be set up in answer.   If he can show that having used
the proper diligence in exerting the power of his office, and the
other available means which may have been commanded, and
having done his duty, the hurt, nevertheless, ensued without
his fault, because there were no means of arresting the viola-
tion of the ordinance, or because other agents of the munici-
pality did not pursue their duty, if it was necessary to call

upon them, those facts are peculiarly matters of defense, to be set up by defendant's answer. The complaint charges that the damage resulted from the negligence of defendant, in his failure to discharge certain duties pertaining especially to his office. That is the issue which he must meet, and if he is able to show that the damage resulted, not from his negligence, but from other conditions, it is a matter of defense.

From a careful consideration of all the objections urged against the complaint, we think the demurrer should be overruled, and the order of this court will be entered accordingly.