LEONARD, Respondent, v. CITY OF BUTTE, Appellant.

(No. 1,334.)

(Submitted May 14, 1901.   Decided June 17, 1901.)

*Municipal Corporations—Sidewalks—Defects—Notice to City —Questions for Jury—Instructions.*

1. In a sidewalk composed of cement blocks, four were broken and replaced. The new blocks were so hard and smooth that 100 persons slipped and fell thereon in about a year, and 25 fell within two months of plaintiff's accident. *Held,* that the question whether the walk was defective and in a dangerous condition was for the jury.

2. Where four blocks in a cement sidewalk differed from the others, and were so slippery that 100 people had fallen thereon within a year, and 25 within two months,—one of them being seriously hurt, and another being helped up by a policeman,—and the place had grown so notorious that it caused amusement among the passers when persons fell there, the question whether the city authorities had notice, actual or constructive, of the defect, was for the jury.

3. Where, in an action against a city for injury caused by a defective sidewalk, the jury are correctly instructed as to the duty of the city relating to walks, but the court, in a paragraph relating to the notice to the city of a defect, declared its duty to be to keep sidewalks "in good condition and safe," instead of in a reasonably safe and good condition, the verdict should not be set aside on that ground, since it was manifest the jury could not have been misled by the charge as a whole.

4. Where in an instruction the court inadvertently uses expressions which assume the existence of a fact in issue, but, taking the whole charge together, it does not appear that the appellant has suffered prejudice thereby, such instruction will not work a reversal of the judgment.

*Appeal from District Court, Silver Bow County; John Lindsay, Judge.*

Action by Philip P. Leonard against the city of Butte. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Affirmed.

*Mr. Edwin M. Lamb,* for Appellant.

*Mr. M. J. Cavanaugh* and *Mr. Bernard Noon,* for Respondent.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the Court.

This action was brought by the plaintiff to recover damages for personal injuries alleged to have been caused by a defect in a sidewalk upon one of the principal streets of the defendant while plaintiff was traveling thereon. There were a verdict and judgment for plaintiff. The appeal is from the judgment and an order denying a new trial. The questions presented to this court are whether the evidence is sufficient to justify the verdict, and whether the court misdirected the jury to the prejudice of the defendant.

1. Counsel for the defendant contends that the evidence is insufficient to justify the verdict, in two particulars: (1) In that no defect was shown to exist in the sidewalk in question; and (2) in that, though a defect was shown to exist, it was not known to the defendant.

From the evidence it appears that the walk in question was upon the east side of Main street, between Quartz and Granite streets, and that there was a great deal of travel over it. It was constructed in 1892 of cement flags about three feet square. The grade of the street and walk at that point is considerable. From some imperfection in construction four of these flags, covering a space about six feet square near the middle of the walk, in front of Mullins' grocery store, became chipped and broken to such an extent that in the spring or summer of 1895 they were removed and four others substituted in place of them. The substituted flags differed in appearance from the rest of the walk; no coloring matter having been used in their construction, as was the case with those first laid. They seemed to be unusually hard and smooth, some of the witnesses stating that they had a hard, greasy or oily appearance and were as smooth as glass. The employees in Mullins' store first observed persons slipping and falling at this point in the fall of 1895; after that time such occurrences were very frequent. One witness states that while he was working for Mullins, between November, 1895, and January, 1896, he saw as many as twenty-five persons fall there; on some of these occasions he saw city officials in the neighborhood, and once a policeman

assisted a woman who had fallen. Another states that he saw as many as one hundred persons slip and fall there at various times before the accident by which plaintiff was injured. These accidents always occurred at the point where the four new flags had been laid, and became so frequent that they were the occasion of a great deal of mirth to other persons in the vicinity who observed them. This witness went to work for Mullins on November 3, 1895; to prevent accidents to Mullins' employees and customers, as well as others, he put dirt or sawdust upon this portion of the walk two or three times a day; he himself fell there and broke his kneecap on July 31, 1896. Accidents always befell passengers going down the street; those going up experienced no trouble. The condition of the weather made little or no difference. This condition of the walk remained unchanged until after plaintiff fell there on the morning of December 11, 1896, when, under the direction of Mullins, this witness and another of his employees cut grooves with a chisel in the surface of these four flags at right angles with the line of grade. After this no accidents occurred.

Under the ordinances of the city, abutting lot owners are required to construct and keep in repair the walks in front of their property. The construction and repairs are required to be of such material as is prescribed by ordinance or resolution of the city council, and to be done to the satisfaction of the street and alley committee or the street commissioner, under the superintendence of the city engineer. It is the duty of the city marshal and all policemen to report to the street commissioner any defects in sidewalks, and, in case of accident, to report the same to the city attorney, with the names of the witnesses. The city engineer is required to fix the grade of the streets and sidewalks, and to see that all work of construction and repairing is properly done. These ordinances were in force at the time of the accident. In this particular instance neither the original construction nor the work of repair was ever formally approved by the city authorities, all having been done under contract let by the abutting owner. A great deal

of evidence was introduced by defendant tending to show that the flags used in repairing the walk were of good materials, properly proportioned, and that the walk was as good as any other of similar construction in the city. There is no proof tending to show that any person made complaint to any of the city authorities about the condition of the alleged defect, though it does appear that such complaint was made to the owner of the building from whom Mullins leased his store.

Counsel argue that upon this evidence this court should declare, as a matter of law, that no defect was shown to exist in the sidewalk in question. The position thus assumed is untenable. There is no controversy upon the evidence but that passengers descending along this walk experienced difficulty in retaining their footing at the point where the repairs had been made, and often met with disaster. We are unable to see why a smooth and slippery condition of a walk, caused wholly by the peculiar construction of it, or resulting from wear by use of the material of which it is composed, may not be a defect, as well as a condition resulting from a fault in construction or from natural decay. A sidewalk upon which a person cannot step without peril of limb from slipping and falling seems equally as defective as one upon which he is constantly in danger of falling from stumbling, or in which there are unguarded openings rendering passage over it dangerous. It was held by the Illinois court of appeals in *City of Centralia* v. *Baker,* 36 Ill. App. 46, that it was a question for the jury whether a sidewalk on the principal street of the village was defective and dangerous because one of the boards out of which it was constructed was so warped by sun and rain as to stand a small distance above the general level, thus presenting an obstruction against which a passenger was liable to stumble and fall. In *Cromarty* v. *City of Boston,* 127 Mass. 329, 34 Am. Rep. 381, the court considered a case in which the injury was caused by a passenger falling upon a portion of a walk rendered smooth and slippery by constant use. The particular portion of the surface of the walk in question was formed by a "Hyatt patent cover,"

made partly of iron and partly of glass, and presumably designed to close some opening in the walk. Counsel for the defendant contended that inasmuch as the general surface of the walk was level, and the "cover" was level with the rest of the walk, there was no evidence of a defect. The court said: "This position cannot be maintained. It cannot be said, as matter of law, that smoothness and slipperiness of a sidewalk, resulting from the condition of the surface of the material of which the walk is made, and not dependent on nor resulting from atmospheric influences, may not render the walk so unsafe and inconvenient for travelers thereon as to be defective and out of repair, within the meaning of the statute. If a walk is constructed of material so smooth and hard that travelers shod in the ordinary way are defeated or obstructed in their attempts to pass over it by inability to get the hold upon it with their feet which is necessary to their walking forward, or the want of which causes them to lose their balance and fall, such walk cannot be said, as matter of law, to be safe and convenient. And if, in a sidewalk, the chief part of which is in proper condition for travel, a small part of the surface is constructed of material different from the remainder, and so smooth and slippery that a foot traveler, stepping suddenly upon it from the portion otherwise constructed, necessarily or probably slips, and is likely to fall, it cannot be said, as matter of law, that such walk is not defective." These remarks are entirely pertinent to the present case. Here the claim is made by plaintiff that the walk was defective. In support of this claim it is shown that many persons had slipped and fallen in the same place,—some twenty-five in the course of two months, and one hundred during about a year's time. One sustained a serious hurt, though accustomed to pass over it in the course of his employment every day, perhaps many times each day. Attempts were made to remove the trouble by putting dirt and sawdust upon the dangerous spot. Finally, when the surface was grooved by Mullins' employees, the difficulty disappeared. We think that the facts shown present a question for the jury, and

not for the court, and that the case falls within the general rule that whether or not there is in fact a defect is a question for the jury. (*Sullivan* v. *City of Oshkosh,* 55 Wis. 508, 13 N. W. 468; *McCloskey* v. *Moies,* 19 R. I. 297, 33 Atl. 225; *Harris* v. *Inhabitants of Great Barrington,* 169 Mass. 271, 47 N. E. 881; *Todd* v. *City of Troy,* 61 N. Y. 506.)

We are also of the opinion that the evidence warranted a finding that the city authorities had notice of the defect. Part of the evidence showing that a policeman observed an accident on one occasion, and lent his assistance to aid a woman who had fallen, tended to show actual notice to the city. It was his duty, under the ordinance, to report to the street commissioner if there was a defect, and, presumably, he performed his official duty. (*Twogood* v. *City of New York,* 102 N. Y. 216, 6 N. E. 275; *Rehberg* v. *Mayor, etc. of the City of New York,* 91 N. Y. 137, 43 Am. Rep. 657; *City of Denver* v. *Dean,* 10 Colo. 375, 3 Am. St. Rep. 594, 16 Pac. 30; *Farley* v. *Mayor, etc. of the City of New York,* 152 N. Y. 222, 57 Am. St. Rep. 511, 46 N. E. 506; Elliott on Roads and Streets (2d Ed.) Sec. 629.) But, even without this item of evidence, and conceding that no duty rested upon the policeman to make report, we think the facts and circumstances shown by the evidence properly presented a case for the jury as to constructive notice. The defect, if it was one in fact, had existed for about a year. It had grown to be quite notorious in the neighborhood, so that it caused amusement among the passengers when persons fell there. At least one serious accident had happened there. It was on a street where there was much travel, and so many falls had occurred there that dirt or sawdust had been cast upon it from day to day to increase the friction and thus lessen the danger. It is hardly conceivable that this condition should exist for a whole year without being in some way brought to the attention of some of the officers of the city whose duty it was to remedy it. In any event, the evidence is sufficient to be submitted to the jury upon the question of constructive notice. "Wherever the defect has existed for such a length of

time and under such circumstances that the city or its officers, in the exercise of proper care and diligence, ought to have obtained knowledge of the defect, notice thereof will be presumed. Having means of knowledge, and negligently remaining ignorant, is equivalent to knowledge. It is generally for the jury to determine, as a question of fact, whether a city has notice or not, although it may become a question for the court where the facts are undisputed, and but one reasonable inference can be drawn from them." (Elliott on Roads and Streets, Sec. 626.)

2. Counsel for defendant criticise paragraph 2 of the instructions on the alleged ground that it declares it to be the duty of a city to keep sidewalks "in good condition and safe" for the passage of persons traveling over them. We understand the rule to be that a city is bound only to use reasonable care to keep its streets and sidewalks in a reasonably safe and good condition for travel (Dillon on Mun. Corp. Sec. 1019), exercising reasonable care in inspecting them to discover any defects therein (*Id.* Sec. 1025). Having observed both of these precautions, reasonable attention being had to the effects of natural deterioration and decay, the authorities will have discharged their full duty. The paragraph under consideration is inaccurate, in that it omits to state that reasonable care, only, is the measure of duty. Yet, when all of the instructions are read together, we think it is apparent that the jury could not have been misled by this error. Paragraph 2 was intended to be a statement of the rule of law as to notice to the city authorities before liability could attach, and it is in connection with the statement of this rule that the inaccurate expression was used. Other paragraphs state clearly and accurately the law relative to the duty of the city generally, and as applied to this particular case. Upon the whole of the instructions upon this point, we think it is clear that the defendant suffered no prejudice.

Counsel also find fault with paragraph 3 of the instructions, in that it assumes the existence of the alleged defect, instead

of leaving the question of its existence to be determined by the jury. In the preceding instruction the court had clearly and explicitly left it to the jury to find whether there was a defect in the walk as alleged, and whether the city had actual notice of it, and, if not, whether, under all the circumstances, and by the exercise of reasonable diligence, it should have had notice of it. In paragraph 3 the expressions "the defect" and "the unsafe condition" were inadvertently used, the court thus speaking for the moment as if the alleged defect stood as an admitted fact. The word "any" should have been used for "the" in each of the expressions; but, taking the whole charge together, we do not think the defendant has suffered prejudice. The cause seems to have been carefully tried, and, except in the particulars mentioned, the charge was correct, and fairly submitted to the jury all the questions involved in the case.

The judgment and order appealed from are affirmed.

*Affirmed.*