SMITH, Appellant, *v.* ZIMMER et al., Respondents.

(No. 3,070.)

(Submitted February 7, 1912.   Decided March 4, 1912.)

[125 Pac. 420.]

*County Commissioners—Road Supervisors—Highways—Defects in—Personal Injuries—Liability for—Notice—Presumptions—Contributory Negligence.*

County Commissioners—Highways—Defects in—Notice—Presumptions.
    1.   Where a defect in a county road has existed for such a length of time and under such circumstances that, in the exercise of reasonable care and diligence, the commissioners ought to have obtained knowledge of it, notice will be presumed. (See Opinion on Rehearing, *post,* p. 302.)

Same—Roads—Evidence.
    2.   Evidence that a board of county commissioners had made record of a certain county road, as required by sections 1341 and 1357, Re-

vised Codes, together with other facts showing its use by the public, was *prima facie* sufficient to show that it was a public road.

Same—Contributory Negligence—Presumptions.

3. *Held,* that plaintiff while driving on a dark night over a public road, of a washout in which he was ignorant, was not, as a matter of law, guilty of negligence in trusting his team to follow the road, but that he had a right to presume that the officers of the county intrusted with the care of the roads had done their duty and that the road was safe.

Same—Negligence—Jury Question.

4. Whether plaintiff when injured acted as a reasonably prudent person would have done, when his team plunged into a washout in the road, partially overturning the wagon into a creek, in his endeavors to escape the plunging horses and extricate himself from a perilous situation, was, under the circumstances of the case, a jury question.

Same—Roads—Repairs—Pleading and Proof.

5. Plaintiff was not under any obligation to allege and prove that defendant road supervisor had funds at his disposal to make necessary repairs on a county road; want of funds was a defense to be determined upon an answer.

Same—Defects in Roads—Personal Liability.

6. *Held,* that county commissioners as well as their road supervisors are personally liable in damages for injuries sustained by reason of their negligent failure to repair, or give warning of, a defect in a public highway which had existed for about five months at the time of the accident.

(MR. JUSTICE HOLLOWAY dissenting.)

[See Opinion on Rehearing, *post,* p. 302.]

*Appeal from District Court, Lewis and Clark County; J. Miller Smith, Judge.*

ACTION by G. W. Smith against Henry Zimmer, road supervisor, and Joseph J. Hindson *et al.,* commissioners of Lewis and Clark county. From a judgment in favor of defendants, plaintiff appeals. Affirmed on rehearing.

STATEMENT OF THE CASE BY THE JUSTICE DELIVERING THE OPINION.

Action for damages for a personal injury. During the year 1909 and up to the time that this action was commenced, the defendants Hindson, Richardson and one Moses F. Root were the commissioners of Lewis and Clark county. Moses F. Root, made one of the original defendants herein, died before the trial and defendant W. F. Root, the administrator upon his estate, was substituted in his stead. Defendant Zimmer was the supervisor of the Augusta road district in Lewis and Clark county. The complaint alleges that it was the duty of the defendant

Zimmer to see that the public roads in the Augusta district were kept in a reasonable state of repair, and, in case any of them became dangerous or impassable from any cause, to restore them by repairing the defects therein, and in the meantime, and until any defect was remedied, to advise the public of its existence; that it was the duty of the defendants Hindson, Richardson and Root, as commissioners of the county, to see that defendant Zimmer discharged the duties named, and, in case he failed to perform them, to cause all reasonable and necessary repairs to be made, and in the meantime to advise the public of the existing conditions; that at the times herein mentioned there was maintained in the district a public road leading from the town of Augusta south, to, across and beyond Elk creek; that early in the month of June, 1909, a washout occurred at a culvert on the road near the crossing over Elk creek, which rendered it impassable and dangerous; that this defective condition was permitted to remain until the time of the accident; that Zimmer knew of it but failed and neglected to remedy it or to advise the public by posting or causing notices to be posted at or near the place, or by any other means; that the defendants Hindson, Richardson and Root, though advised that the condition was dangerous and though they knew that defendant Zimmer was derelict in his duty in the premises, failed and neglected to take any steps to have necessary repairs made or to give notice or warning to the public by posting notices or otherwise; and that the defect was a public nuisance of which defendants had notice. It is then alleged that on October 11, 1909, the plaintiff, while driving his wagon along the road, being without knowledge or warning of the defect therein and it being so dark that he could not see, was precipitated into said washout, whereby he sustained injuries rendering him permanently crippled and lame.

The defendants, Hindson, Richardson and Root, after admitting that they were commissioners as alleged, deny specifically all the allegations in the complaint. They then allege several affirmative defenses, among which are the following:

(1) That plaintiff was guilty of contributory negligence; (2) that the defect in the highway was being repaired as rapidly as possible; that all the highways in the county at the time of the accident were in a greatly damaged condition; and that plaintiff knew of the defect by which he was injured; (3) that at all the times mentioned, the defendants were acting in their official capacity as county commissioners, and were proceeding in good faith in the honest discharge of all their duties, and particularly with reference to the road upon which plaintiff was injured. The answer of Zimmer is substantially the same, except that as an additional defense he alleges that the board of commissioners had not made any appropriation of funds for the repair of the roads in his district to cover a later date than May 31, 1909, and that all appropriations made for such repairs had been exhausted long before the date of the accident. There was issue by reply.

At the close of plaintiff's evidence the defendant commissioners and Zimmer interposed separate motions for nonsuit, both of which enumerated the grounds, (1) that the evidence fails to show that any of the defendants owed a legal duty to plaintiff; (2) that it fails to show that the defendants had notice of the defect in the road; (3) that it fails to show that the road is a public highway; (4) that it affirmatively shows contributory negligence upon the part of plaintiff. The motion of defendant Zimmer included the additional ground: (5) That the evidence fails to show that there were funds available with which to repair the roads in his district. The court sustained the motion generally and rendered judgment for the defendants. The appeal is from the judgment.

*Messrs. Walsh & Nolan,* for Appellant, submitted a brief; *Mr. C. B. Nolan* argued the cause orally.

It is claimed that as the respondents were public officers, they owed no duty to the appellant and are not responsible individually for the injuries due to their neglect. This subject has received exhaustive attention by the courts, and while there are

a few courts that hold with respondents, the overwhelming weight of authority is to the contrary. (See *Sells* v. *Dermody,* 114 Iowa, 344, 86 N. W. 326; *Doeg* v. *Cook,* 126 Cal. 213, 77 Am. St. Rep. 171, 58 Pac. 707; *Robinson* v. *Chamberlain,* 34 N. Y. 389, 90 Am. Dec. 714; *Mattson* v. *Astoria,* 39 Or. 577, 87 Am. St. Rep. 688, 65 Pac. 1066; *Bennett* v. *Whitney,* 94 N. Y. 354; *Amy* v. *Barkholder,* 11 Wall. (U. S.) 136, 20 L. Ed. 101.)

Our Code provisions impose duties upon the county commissioners regarding public highways, and their failure to discharge these duties makes them responsible to the individual sustaining injury. (*County Commrs.* v. *Duvall,* 54 Md. 350, 39 Am. Rep. 394; *Baltimore County Commrs.* v. *Wilson,* 97 Md. 207, 54 Atl. 72, 56 Atl. 596; *Embler* v. *Walkill,* 57 Hun, 384, 10 N. Y. Supp. 797.)

It is suggested, however, that at most this was a failure to do something rather than doing something wrongfully or negligently on the part of the respondents; in other words, we are concerned with a case of nonfeasance rather than misfeasance, and while responsibility might attach for affirmative negligent conduct, none can for nonaction. In some of the decisions to which reference has already been made, declarations appear that liability arises from nonaction as well as misconduct. (*Hover* v. *Barkhoof,* 44 N. Y. 113.) Whatever may be said in reference to this principle as applied to master and servant, it has no application to a public officer in the discharge of a public duty. But even if it did, the facts in this case make the nonaction misfeasance. This proposition is set at rest by this court in the case of *Hagerty* v. *Montana Ore Pur. Co.,* 38 Mont. 76, 25 L. R. A., n. s., 356, 98 Pac. 643. Negligence may be predicated on the omission to perform a duty enjoining personal supervision and care, as well as improper performance of such duty. (*Bostwick* v. *Barlow,* 14 Hun, 177.)

We are told that the action should be brought against the county rather than against the respondents individually. We reply that the county is not responsible. (See *Watkins* v. *County Court,* 30 W. Va. 657, 5 S. E. 656; *Huffman* v. *San Joaquin County,* 21 Cal. 430.)

We have canvassed decisions generally thus far sustaining our contention as to the liability of respondents as public officers, but we insist that this court has settled this matter in our favor in the cases of *Merritt* v. *McNally*, 14 Mont. 228, 36 Pac. 44, and *Bair* v. *Struck*, 29 Mont. 45, 63 L. R. A. 481, 74 Pac. 69. The work of repairing highways is ministerial. (*Harris* v. *Carson*, 40 Ill. App. 147.) Plaintiff is not required to bring to defendants actual notice of this defect in the highway. (*Requa* v. *City of Rochester*, 45 N. Y. 130, 6 Am. Rep. 52.) Want of knowledge sometimes implies a want of due care, as where township officers whose duty it is to keep bridges in a safe condition do not know of defects which an examination would readily disclose. (*Medina* v. *Perkins*, 48 Mich. 67, 11 N. W. 810.) In an accident for injuries received from a defective condition of a bridge, it is not error to instruct that actual notice is not necessary where the defects are of such a character, or have existed for such a length of time that they might by ordinary diligence have been discovered and repaired. (*Central City* v. *Marquis*, 75 Neb. 233, 106 N. W. 221.) Evidence that a hole in a bridge on one of the principal streets of a city was permitted to remain from five to twenty days is sufficient to charge the city with notice of its existence. (*City of Griffin* v. *Johnson*, 84 Ga. 279, 10 S. E. 719; *Morris County Chosen Freeholders* v. *Hough*, 55 N. J. L. 628, 28 Atl. 86; *Savage* v. *City of Bangor*, 40 Me. 176, 63 Am. Dec. 658; *Foels* v. *Town of Tonawanda*, 75 Hun, 363, 27 N. Y. Supp. 113.) The liability of a town for the damages occasioned by a defect in a highway does not depend on the fact whether or not the officers or agents had actual notice of the existence of the defect, provided it were of such a character and of such continuance at the time of the accident that the town was reasonably bound, under all the circumstances, to have remedied it. (*Howe* v. *Plainfield*, 41 N. H. 135.)

*Mr. O. W. McConnell* submitted a brief in behalf of Respondents, other than Zimmer, and argued the cause orally.

The board of county commissioners have a general supervision over the road supervisors. They appropriate the money for

the payment of the work, but the responsibility of doing the work and the actual labor and repair upon the highway is made the duty of the road supervisors. "Where a general direction is given to selectmen over the work of highway surveyors in their respective districts to see that the money appropriated to such districts is carefully and judicially expended, the responsibility of doing the work, directing the laborers and taking charge of repairs is that of the highway surveyors." (*Pratt* v. *Weymouth,* 147 Mass. 245, 9 Am. St. Rep. 691, 17 N. E. 538; *Benjamin* v. *Wheeler,* 15 Gray (Mass.), 486.) So if there is any neglect or failure to repair the roads in question, and damage results therefrom, it is not the neglect or fault of the board of county commissioners, but of the road supervisors. "Road overseers, and not the county boards, are liable for damages resulting from nonrepair of the roads." (*Suttan* v. *Carroll County Board,* 41 Miss. 236.)

There was no personal obligation resting upon the board to do the repairs upon the road in question. It was the duty of the road supervisor, if anyone, to have repaired the road, and not the board. The powers of the board over the highways were judicial and discretionary, and in passing upon matters pertaining to the roads they were exercising *quasi*-judicial functions, at least, and are exempt from liability for injuries from failure to repair. "The exemption of *quasi*-judicial officers from liability has been applied in favor of such officers as highway commissioners and county commissioners." (23 Am. & Eng. Ency. of Law, p. 377; *Sage* v. *Laurain,* 19 Mich. 137; *Waldron* v. *Berry,* 51 N. H. 136; *Smith* v. *Gould,* 61 Wis. 31, 20 N. W. 369; *Hannor* v. *Grizzard,* 96 N. C. 293, 2 S. E. 600.)

The fact that the statutes give the board of county commissioners general supervision over the highways, and general direction and supervision over road supervisors, is indicative of the fact that the duty imposed is to the public only, to the body politic, and not to any particular individual, and if they fail to perform this duty, a suit could not be maintained by a private individual against the commissioners in their individual capa-

city. (See *Miller* v. *Ouray Light Co. et al.,* 18 Colo. App. 131, 70 Pac. 447.) It was not alleged or proven by the appellant that the three county commissioners did not act in good faith and in the honest discharge of their official duties, and when "county commissioners act in their official capacity in good faith and in the honest discharge of official duty, they cannot be held to personally respond in damages." (*Thomas* v. *Wilton,* 40 Ohio St. 516.) For other cases holding that the commissioners are not individually or personally liable, see *Sussex County* v. *Strader,* 18 N. J. L. 108, 35 Am. Dec. 530; *Cooley* v. *Essex,* 27 N. J. L. 415; *Livermore* v. *Camden County,* 29 N. J. L. 245; *Paxton* v. *Arthur,* 60 Miss. 832; *Moulton* v. *Parks,* 64 Cal. 166, 30 Pac. 613; *Schnurr* v. *Commissioners,* 22 Ind. App. 188, 53 N. E. 425; *Nemaha County School Dist.* v. *Burress,* 2 Neb. Unof. 574, 89 N. W. 600; *McConnell* v. *Dewey,* 5 Neb. 385; *Board* v. *Strader,* 3 Harr. (18 N. J. L.) 108, 35 Am. Dec. 530; *Dunlap* v. *Knapp,* 14 Ohio St. 64, 82 Am. Dec. 468; *Thornton* v. *Springer,* 5 Tex. 587; *Nagle* v. *Wakey,* 161 Ill. 387, 43 N. E. 1079; *McKenzie* v. *Chovin,* 1 McMull. L. (S. C.) 222; *Day* v. *Crossman,* 1 Hun (N. Y.), 570.

The cases relied upon by appellant, and apparently holding contrary to the line of authorities cited by respondents, are cases largely arising in cities, where the street commissioner and the town council are held to a stricter liability than is applicable to large counties, such as prevail in Montana. It will also be noted that in the cases cited by appellant, the statute fixes the liability upon the public officers.

The appellant has not alleged or proven the violation of any duty imposed upon the county commissioners by statute, and "A violation of the duty imposed by statute must be shown." (*Smith* v. *Wright,* 27 Barb. (N. Y.) 621.) The statutes of Montana give no right of personal action, and where a statute gives no right of action, none can be maintained. (*Wabash* v. *Spears,* 16 Ind. 441, 79 Am. Dec. 444; *Morrison* v. *McFarland,* 51 Ind. 206; *Lynn* v. *Adams,* 2 Ind. 143.) In the case of *Dunlap* v. *Knapp,* 14 Ohio St. 64, 82 Am. Dec. 468, the court held

"that the only remedy against a road supervisor was under the statute for the penalty imposed and not civilly." (See, also, *Nowell* v. *Wright,* 3 Allen (Mass.), 166, 80 Am. Dec. 62.)

*Messrs. Heywood & Phelan* submitted a brief in behalf of Respondent Zimmer.

There is no allegation in the complaint that the board of county commissioners had given any direction to the road supervisor, with reference to the repair of the highway upon which the plaintiff received his injuries, nor is there any allegation in the complaint to the effect that the board had apportioned any sum of money for the repair of highways within the road district of the respondent, Zimmer, for the quarter during which the injury complained of was received, and, in the absence of such allegation, it cannot be said that the complaint states a cause of action against the road supervisor. Where the officer has not the power of taxation, it must be alleged and proved that funds were available to enable him to do that which his failure to do has led to the injury complained of. (*Smith* v. *Wright,* 27 Barb. (N. Y.) 621; *Garlinghouse* v. *Jacobs,* 29 N. Y. 297.)

A road supervisor is not personally liable in damages to travelers who may be injured by reason of the defective condition of highways, for the reason that their failure to repair is regarded as nonfeasance merely and as a failure of duty to the county, and not a failure of duty toward particular individuals. (*Nagle* v. *Wakey,* 161 Ill. 387, 43 N. E. 1079.) "Public officers are, in most cases, exempt from civil liability for injuries flowing from a mere omission to discharge the duties of their office, because the obligation is one which they owe to the state, and not to its citizens distributively." (5 Thompson on Negligence, sec. 6402.) No civil liability is imposed by statute against the road supervisor for failure to keep the roads within his district in repair, and unless such liability is imposed by statute, none exists. (*Dunlap* v. *Knapp,* 14 Ohio St. 64, 82 Am. Dec. 468.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The evidence discloses the following: The accident occurred on October 11, 1909, near the point where the road crosses Elk creek by a steel or iron bridge. As it approaches the bridge, the road extends along the shore of the stream only a few feet away. It is upon a grade two and a half or three feet above the level of the natural surface. At the bridge it turns at a right angle. In the grade was a culvert, constructed so as to allow the passage of water into Elk creek through a coulee which the road crosses. On the side toward the stream between the culvert and the bridge, the grade, except a small portion about three feet in width, had been undermined and washed away by high water in the latter part of the preceding June, leaving a cut bank and an excavation several feet in depth. At the time of the accident this excavation was filled with water. In the morning plaintiff had gone to Augusta, traveling over a cut-off road through the country. He left there about dark, taking the county road, because, as he said, he deemed it safer. He knew that there had been high water early in the year and that the roads in some places had been washed out, but had no knowledge of any washout on this road. The night was so dark that he could not see. He trusted to his team, which consisted of old and gentle horses, to follow the road. When the horses passed the culvert and reached the excavation they plunged into it, partially overturning the wagon into the water. He was much frightened by the suddenness of the accident, and, being unable to see, could not tell what further danger was impending. He was under the impression that the horses in their plunging would completely overturn the wagon and pin him down in the water. As he struggled in the water to escape the plunging horses and to extricate himself, his foot was caught and held fast in the "comb" of the wagon brake. He finally succeeded in releasing the horses by cutting the traces with his pocket knife; but in the struggle to avoid injury from them and afterward to release his foot, which he finally did by cutting off

his shoe, his ankle was bruised and wrenched, with the result that he has become permanently lame. There is little direct testimony tending to show that any of the defendants had actual notice of the condition of the road; but it is not controverted that the washout had occurred in the month of June and that no attempt had been made to repair the defect or remove the obstruction caused by it. It appears that the road is an old and regularly traveled road, having been used as such for many years, the plaintiff stating that he had known and traveled it for thirty-nine years; that it had been repaired at times by the supervisor of the district, and that, as already noted, it crosses Elk creek by an iron bridge. It appears also that there is a record and map of it among those of the county roads kept in the office of the county clerk.

Passing, for the moment, the question whether upon the facts disclosed there arose a liability on the part of the defendants or any of them for an injury resulting from their failure to discharge a duty enjoined upon them by law, the motion for a nonsuit should not have been sustained upon any of the four other grounds enumerated. Upon the assumption that it was the imperative duty of the defendants under the law, without reference to their rank of office, to keep the roads of the county in a reasonably safe condition, they were under an obligation, equally imperative, to exercise reasonable care to inspect them from time to time to ascertain their condition, in order that they might perform this duty; for it would be absurd to say that they owed a duty to the public generally and to the private citizen personally by reason of their official position, but that they were under no obligation to ascertain when action on their part was required, or that they were not obliged to act until they had received personal notice of a condition calling for action. An equivalent proposition would be to assert that though these officers have exclusive control and supervision over the county roads, with the incidental but imperative duty to keep them in reasonably safe condition, they are not required to repair until they are requested to do so. If they are liable at all, the rule

of reasonable diligence applicable to municipalities applies to [1] them, *viz.*, that when the defect has existed for such a length of time and under such circumstances that the municipality or its officers, in the exercise of reasonable care and diligence, ought to have obtained knowledge of it, notice will be presumed. (*Leonard* v. *City of Butte,* 25 Mont. 410, 65 Pac. 425; Elliott on Roads and Streets, sec. 626.) The evidence on this branch of the case was sufficient to require it to be submitted to the jury.

The evidence was also sufficient to go to the jury upon the question whether the road was a public highway falling under the jurisdiction of the defendants, within the definition of the statute (Rev. Codes, sec. 1337), *viz.:* "All * * * roads laid out or erected by the public or now traveled or used by the public, or if laid out or erected by others, dedicated or abandoned to the public, or made such by the partition of real property are public highways." The record kept by the [2] commissioners, presumably under the requirements of other provisions of the Codes (secs. 1341, 1357) amounts to a recognition of the road in question by the board of commissioners, the executive body of the county, as a public road. This, together with the other facts showing its use by the public, was a sufficient *prima facie* showing that it is a public road. (*State* v. *Auchard,* 22 Mont. 14, 55 Pac. 361; *Bequette* v. *Patterson,* 104 Cal. 282, 37 Pac. 917; *Bayard* v. *Standard Oil Co.,* 38 Or. 438, 63 Pac. 615; *Kircher* v. *Town of Larchwood,* 120 Iowa, 578, 95 N. W. 185; *Madison Township* v. *Scott,* 9 Kan. App. 871, 61 Pac. 967.)

The fact that the injury suffered by the plaintiff was due, in any measure, to his inadvertence in driving into the excavation or to his struggle to extricate himself from the dangerous position, does not necessarily lead to the conclusion, as a matter of [3] law, that he was guilty of negligence. The evening was so dark that he could not see. It was natural that, not having any knowledge of the washout, he should leave the horses to follow the road. He had a right to presume that there was

no pitfall therein into which they would take him; in other words, that the public officers had done their duty. (*Weed* v. *Village of Ballston Spa,* 76 N. Y. 329.) And when the wagon was overturned into the water and his foot became fastened, it was but natural that in his fright and anxiety for his own safety and that of his property, induced by his inability to understand the situation, he did not act with that coolness and prudence which would have been required of him under ordinary circumstances.

In alleging the fourth ground of the motion the defendants evidently sought to invoke the exception or corrollary to the general rule, that contributory negligence is a matter of defense, **[4]** *viz.,* that when the plaintiff's own case raises a presumption of contributory negligence, the burden of proof is immediately upon him to exculpate himself from the suspicion, thus created, of the lack of due care on his own part, which will otherwise be imputed to him. (*Kennon* v. *Gilmer,* 4 Mont. 433, 2 Pac. 21; *Nelson* v. *City of Helena,* 16 Mont. 21, 39 Pac. 905.) If it be admitted that, had plaintiff refrained from struggling to save himself and his property, he would not have been caught in the brake or suffered injury, it was nevertheless, under the circumstances shown, a question for determination by the jury whether he acted as a reasonably prudent person would in the emergency in which he unexpectedly found himself. '(*Kennon* v. *Gilmer, supra.*)

We are of opinion, also, that the fifth ground of the motion was not well laid. The question involved was considered by this court in *Merritt* v. *McNally,* 14 Mont. 228, 36 Pac. 44, and decided adversely to the contention of defendants. As there pointed out, it is not incumbent upon the plaintiff to allege and **[5]** prove that defendant Zimmer had funds at his disposal which he could use in order to make the necessary repairs in the road, but that the question of defense based upon such matter must be determined upon an answer. (See, also, *Adsit* v. *Brady,* 4 Hill (N. Y.), 630, 40 Am. Dec. 306; *Weed* v. *Village of Ballston Spa, supra.*)

This brings us to the consideration of the question presented by the first ground of the motion. In *Adsit* v. *Brady, supra,* Judge Bronson, speaking for the court, said: "When an individual sustains an injury by the misfeasance or nonfeasance of a public officer, who acts or omits to act contrary to his duty, the law gives redress to the injured party by an action adapted to the nature of the case. This principle is so well settled that it is only necessary to inquire whether there be anything in this case to take it out of the operation of the general rule." The rule thus broadly stated includes nonfeasance or misfeasance with reference to any official duty, whether it is ministerial or discretionary, or whether it falls exclusively within the class of those which are due to the public only, as distinguished from those which are due to the private citizen also.

After pointing out the distinction between the different kinds of duties imposed upon public officers, Judge Cooley, with reference to their liability to private suits for nonfeasance or misfeasance in the performance of them, says: "The rule of official responsibility, then, appears to be this: That if the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public, not an individual, injury, and must be redressed, if at all, in some form of public prosecution. On the other hand, if the duty is a duty to the individual, then a neglect to perform it, or to perform it properly, is an individual wrong, and may support an individual action for damages."

In Shearman & Redfield on Negligence, third edition, section 156, the rule is stated thus: "The liability of a public officer to an individual for his negligent acts or omissions in the discharge of an official duty depends altogether upon the nature of the duty as to which the neglect is alleged. Where his duty is absolute, certain and imperative, involving merely the execution of a set task—in other words, is simply ministerial—he is liable in damages to anyone specially injured either by his omitting to perform the task, or by performing it negligently

or unskillfully.   On the other hand, where his powers are discretionary, to be exercised or withheld according to his own judgment as to what is necessary and proper, he is not liable to any person for a neglect to exercise those powers, nor for the consequences of a lawful exercise of them, where no corruption or malice can be imputed, and he keeps within the scope of his authority.   An officer possessing such discretionary powers is spoken of as a judicial or *quasi*-judicial officer, from the likeness of his discretionary functions to those of a judge who decides controversies between individuals.''

We apprehend that no court would fail to observe the distinction here pointed out, because it is based upon principles of public policy.   It would be intolerable if every public officer were compelled to act or refrain from acting at his peril of a suit for damages by a private citizen, without regard to the nature of the duty involved or the character of the resulting injury.   It must, therefore, be the case that unless the particular duty is one the performance of which the individual citizen has a right to demand in his own behalf, or the omission or inadequate performance of which results in special injury to him, he has no right of action for a dereliction with reference to it, by the officer upon whom it is imposed; for in such a case the wrong is public, not private, and must be redressed, if at all, by some remedy invoked on behalf of the public, such as summary removal from office, or removal by impeachment, or a criminal prosecution under the provisions of law applicable.   A reference to a few cases will show that this is the rule established by current authority.   As we have said, the statement of Judge Bronson, in *Adsit* v. *Brady, supra,* taken literally, would cover every case of official dereliction; yet at the close of the opinion, in answer to the contention of counsel that the defendant had a discretion with reference to the duty involved, and that his neglect should have been charged as willful and malicious, the court said that in the performance of the particular duty he had no discretion.   This statement impliedly recognized

the distinction pointed out by Cooley and Shearman & Redfield, *supra.*

In *Garlinghouse* v. *Jacobs,* 29 N. Y. 297, the same court, through Judge Wright, criticised the opinion in *Adsit* v. *Brady* as stating the rule too broadly; but in the case of *Robinson* v. *Chamberlain,* 34 N. Y. 389, 90 Am. Dec. 713, it was said by Peckham, Judge, with reference to the rule as therein declared: "This is a healthful rule, sound entirely in public policy, if as a rule of law it can be questioned." The case is cited and approved in *Hover* v. *Barkhoof,* 44 N. Y. 113, and later cases. It may be said, however, that the dereliction in question in each of these cases was with reference to a specific duty expressly imposed by statute upon the defendant. In *Adsit* v. *Brady* the charge was neglect as superintendent of repairs on canals, to remove an obstruction from the Erie canal, a duty enjoined upon the defendant by statute. In *Robinson* v. *Chamberlain,* for a similar reason the defendant who had, under authority of a statute, undertaken by contract to keep a portion of the canals in proper condition and repair, was held for neglect of his duty, upon the theory that, having by his contract assumed to perform a specific duty, he was liable for any negligence resulting in special injury to a private citizen, just as much as a public officer would have been, had the same duty been imposed upon him. In *Hover* v. *Barkhoof* the commissioners of a town having sufficient funds in their hands, or obtainable, to repair a defective bridge, were held for neglect to repair, which resulted in damage to plaintiff by a fall of the bridge. In this case the duty was enjoined by statute.

It may well be said that the rule of liability is the same, whether the duty is imposed by statute or arises by implication out of the character of the office and the attendant duty; yet the duty must be clear and certain. In *Doeg* v. *Cook,* 126 Cal. 213, 77 Am. St. Rep. 158, 58 Pac. 707, under a charter of a town which imposed upon the board of town trustees and the marshal the duty to keep the streets of the municipality in repair, it was held that these officers were liable to the plaintiff

for permitting a culvert to remain open and without guard, by reason of which the plaintiff fell into it and was injured. The court quotes approvingly from *Robinson* v. *Chamberlain, supra,* wherein the broad rule as stated in *Adsit* v. *Brady* is approved. But the court evidently understood the rule as referring to duties ministerial in character, and not to those which are discretionary.

In *County Commissioners* v. *Duckett,* 20 Md. 468, 83 Am. Dec. 557, the commissioners of Anne Arundel county were held liable for an injury caused by a defect in a road because they were charged generally with the duty of keeping the roads in repair.

In *Sells* v. *Dermody,* 114 Iowa, 344, 86 N. W. 326, there was involved the question whether a road supervisor was liable for neglect to repair a road in his district, whereby the plaintiff suffered injury. The court, after an extensive citation of authorities, including American and English cases, held that he was. The following authorities also sustain the rule: *Mattson* v. *Astoria,* 39 Or. 577, 87 Am. St. Rep. 688, 65 Pac. 1066; *Amy* v. *Supervisors,* 11 Wall. (U. S.) 136, 20 L. Ed. 101; *Bennett* v. *Whitney,* 94 N. Y. 354; *County Commissioners* v. *Wilson,* 97 Md. 207, 54 Atl. 71, 56 Atl. 596; *Pennington* v. *Streight,* 54 Ind. 376; *Grider* v. *Tally,* 77 Ala. 422, 54 Am. Rep. 65; *McCord* v. *High,* 24 Iowa, 336; 11 Cyc. 412.

In two cases—*Merritt* v. *McNally, supra,* and *Bair* v. *Struck,* 29 Mont. 45, 63 L. R. A. 481, 74 Pac. 69—this court has recognized and applied the rule, holding public officers liable for nonfeasance or misfeasance, with reference to ministerial duties. In some states the liability of officers having supervision of the public roads is denied. In *Worden* v. *Witt,* 4 Idaho, 404, 95 Am. St. Rep. 70, 39 Pac. 1114, the court bases its conclusion that they are not liable, upon considerations of public policy. Where the services required by the statute are compulsory, it is held that liability does not attach, except when declared expressly by the statute. (*Thornton* v. *Springer,* 5 Tex. 587.) The holding in these cases is exceptional.

The liability of defendants in this case, then, is to be determined by reference to the provisions of the Codes defining their duties. These are the following:

The boards of county commissioners must divide their respective counties into suitable road districts. (Rev. Codes, sec. 1356.) The board has general supervision over the highways and must cause to be opened and worked such as may be necessary. It also has power to do whatever in its judgment and discretion may be necessary for the best interests of the roads and road districts in the county; and the road supervisor shall in all things be under the direction and control of the board. (Sec. 1357.) The board must appoint road supervisors. (Sec. 1358.) The supervisor shall be a resident of his district. (Sec. 1359.) "Under the direction and supervision of the board of county commissioners," the supervisor must take charge of the roads, keep them clear from obstructions and in good repair, cause banks to be graded, bridges and causeways to be made where necessary and to keep the same in good repair and renew them when destroyed. (Sec. 1360.) If a supervisor neglects or fails to perform the duty imposed by law and such rules and regulations as may be laid down by the board, the board may remove him and appoint another suitable person in his place. (Sec. 1362.) The supervisor must open or cause to be opened when ordered by the board all highways which have been laid out and established, and must keep the same in good repair; and if the levy for that purpose is not sufficient, the board may appropriate from the general road tax any amount that may be necessary for the purpose. (Sec. 1363.) When directed by the board to repair any highway in his district, the supervisor must proceed without unnecessary delay, and for that purpose is empowered to employ laborers, teams and obtain implements. (Sec. 1364.) If at any time during the year a highway becomes obstructed, the supervisor must "upon being notified thereof" forthwith cause the obstruction to be removed, and for this purpose he may order out such number of the inhabitants of the district as may be necessary. (Sec. 1372.)

He must cause encroachments upon the highways to be removed. (Sec. 1373.) The board may by order direct the county surveyor or any member of the board, or both, to inspect the condition of any highway before payment is made for work thereon. (Sec. 1387.) The board must keep a roadbook, containing a record of all proceedings and adjudications relating to the use, maintenance, change or discontinuance of roads and road districts and relating to road supervisors. (Sec. 2890.)

It thus appears that the agency ultimately responsible for the care of public roads is the board of commissioners. [6] This body acts as a unit. A majority of its members control its action. But this is not a reason why the individual members who are in the majority should not be held responsible for the result of a dereliction of duty. Under the provisions of the statute the general supervision of the roads, which includes attention to necessary repairs upon those already made as well as the improvement of them, and the opening of new ones, is vested in the board. It must designate suitable districts and appoint a supervisor for each of them. He must act under the requirements of the law and the regulations prescribed by the board, and keep the roads clear of obstructions and in good repair. In case a road becomes obstructed from any cause, upon being notified, that is when he has actual knowledge of the fact or the circumstances are such that notice must be presumed, he must at once cause the obstruction to be removed. To meet the exigency, ample means are put at his disposal. If he fails in his duty, one of two courses is open to the board, *viz.*, it may order him to do his duty and thus compel performance, or it may remove him and substitute an efficient man in his place. Does the time never come when the duty to pursue one of these courses becomes imperative? Upon making the appointment, may the members of the board close their eyes to conditions which are certain to arise from time to time, demanding efficient action to guard the interests of the public generally and the safety of the individual citizen who had a right to expect them to discharge their duty? May they, knowing that a supervisor

is grossly derelict in his duty, devest themselves of all responsibility to the individual members of the community by the claim that they owe service to the general public only, and that their duties are altogether discretionary? We think not. Clearly, the supervisor is liable under the provision of section 1372, *supra;* for under it, when an emergency arises calling for action, his duty is made imperative. So, also, when through his dereliction conditions of which the members of the board must have notice are permitted to continue, imperiling the safety of the citizen, the obligation is upon them to act; in other words, to see that their appointee, the supervisor, or one appointed in his stead, discharges his official duty.

Under the facts appearing in the evidence, a *prima facie* case of liability is made against the defendant Zimmer, for failure to make the repairs by removing the obstruction, or, in case he could not do so, for failure to warn the public of the existing condition; and as against the other defendants, for failing to compel him to discharge his duty. At the trial all of the defendants may be able to show that the conditions were such that, with the means at their disposal, they were unable to make the necessary repairs. But the burden rests upon them to do so, the presumption being that they had such means. But even this would not excuse the omission to take suitable measures to give notice of the obstruction or to provide suitable barriers to prevent a traveler from being injured by it, if the facts show that such was the case.

The judgment is reversed, and the cause is remanded for further proceedings.

*Reversed and remanded.*

Mr. Justice Smith concurs.

Mr. Justice Holloway: I dissent from the conclusion of the majority of the court in so far as it holds that the complaint states a cause of action against the individual commissioners or the estate of Moses F. Root, deceased, or that the evidence produced makes out a *prima facie* case as against them.

The duty enjoined by law upon the commissioners is a public duty, for the breach of which the public may obtain redress, but to hold that the statute which confers general supervisory control upon the commissioners over the road supervisors creates a duty in the commissioners which is owed directly to every individual is to my mind contrary to the spirit and purpose of the law. With this heavy penalty attached, it seems impossible that any sane man will hereafter accept the office of county commissioner with its meager compensation. If the duty which these commissioners owed to the plaintiff was such a duty only as they owed to all members of the community in common, then it is elementary that for a breach of that duty, an action in favor of the individual will not lie. I content myself with a reference to 2 Elliott on Roads and Streets, sections 857–863, and the cases therein cited.

Rehearing granted April 9, 1912.

## OPINION ON REHEARING.

(Submitted May 25, 1912. Decided May 29, 1912.)

Opinion of MR. JUSTICE SMITH on rehearing.

The problem presented by this case cannot be solved along any logical lines. Regarded as a defendant in an action to recover damages for personal injuries on account of his alleged official negligent act, or neglect to act, a county commissioner appears to be *sui generis*. At first blush it is difficult to see why he should not be subject to the rules of law applicable to every other official and individual, that is to say, personally liable for his negligent misconduct or malfeasance. Whichever way the cause is decided would seem to violate some well-settled principle of law. A majority of the court, of which the writer was one, has determined that county commissioners may be held personally responsible for damages sustained by reason of their negligent failure to repair, or give warning of, a defect in a public highway. The position thus taken is fortified by a

large number of very respectable authorities which are cited in the opinion already rendered. On the other hand, the supreme court of Idaho in *Worden* v. *Witt,* 4 Idaho, 404, 95 Am. St. Rep. 70, 39 Pac. 1114, held unreservedly that county commissioners are not individually liable in damages for injuries sustained by reason of defective highways. In that case the court said: "To hold counties or county commissioners liable for all injuries arising from defective highways, in this country, would result in two very undesirable conclusions—the literal abrogation of the office of county commissioner (for no sane man would assume the position, with such a liability attached), and the bankruptcy of every county in the state." I cannot recognize either reason as sound. In the first place, no one has ever contended, so far as I know, that county commissioners are liable for all injuries arising from defective highways. The majority opinion and the cases therein cited simply hold that county commissioners are liable when they have been found guilty of negligence. This general rule applies to every other individual, official and corporation in the state, and I fail to see any good reason why county commissioners should be immune from it. Again: I think the averment that no sane or responsible man will be willing to assume the duties of the office if commissioners are to be held liable for acts of negligence is not only entitled to no weight as an argument, but is a misstatement of fact. I respectfully protest against such an argument being employed to influence a court in its determination of an important question of law. The fundamental law of a state is not to be changed or misconstrued out of consideration for an individual who may be adversely affected by his violation of it.

The liability of county commissioners is not absolute, but depends upon a solution of the question whether or not they have been guilty of negligence. I see no occasion for excitement on the part of the county commissioners of the state and no reason why they should not proceed as heretofore to maintain old and open new highways, with a view to accommodating the people of their respective counties and developing the country.

All they are required to do is to exercise a reasonable degree of care in the performance of the duties devolving upon them by law—the duties which they have taken an oath to perform; the same degree of care which an ordinarily prudent man would exercise in the conduct of his own affairs. I predict that substantial and patriotic citizens will still be found who are public spirited enough to hold the office and properly perform its duties.

The nonliability of the county itself rests upon an entirely different principle from that which is invoked in an attempt to show that the commissioners cannot be made to respond in damages personally. The reason why a county is not liable is that it is a political subdivision of the state, and neither the latter nor any of its subdivisions may be sued without its consent. Such consent has never been given by the law-making power of this state. (5 Thompson on Negligence, sec. 5822.) The doctrine that a city is liable for neglect to keep its highways in suitable repair is grounded upon the principle that the state has committed the care and reparation of the public highways within the corporate limits to the corporation and that the latter has assumed the trust as a corporate duty. (5 Thompson on Negligence, sec. 5806.) Mr. Thompson also says (sec. 5822, *supra*) that the reason of the rule which charges a city with liability and under the same circumstances exonerates a county is artificial and not supported by legal reason or analogy.

In my judgment the supreme court of Vermont has taken the only logical position in denying the liability of selectmen, officers similar to our county commissioners; although I think the argument advanced is, in part, fallacious. In *Daniels* v. *Hathaway,* 65 Vt. 247, 21 L. R. A. 377, 26 Atl. 970, the court held that selectmen were not liable to an action for damages for personal injuries alleged to have resulted from a defect in a public highway, for the reason that in matters relating to public highways they act as a board and their duties are, to a certain extent, judicial or *quasi* judicial. While it is

doubtless true that many of the duties devolving upon a board of county commissioners are *quasi* judicial in that they involve the exercise of judgment and discretion, it cannot be said that a negligent omission to act at all, or to take any precautions for the safety of the traveling public, is a judicial or *quasi*-judicial act. When an act is characterized as negligent, it seems to me to be a contradiction in terms to say that it was the result of judgment and discretion. I therefore adhere to the opinion that, in a proper case, county commissioners are liable to those who, by reason of their negligent conduct or neglect of duty, suffer injury.

But the court has also held that they as individuals may be charged with constructive notice of a defect in a highway. I have no pride of opinion in this matter, and, since listening to the reargument, I have arrived at the conclusion that the court was in error in so holding. I am impressed with the soundness of the doctrine that in order to charge the individual commissioners, or any of them, with a neglect of duty, it must appear that the board, as such, had actual notice of the defective condition of the highway. I have no doubt that when an office is held by a single individual, notice to him personally is, ordinarily, notice to him officially. But when a duty devolves upon a board which has sole power to act, and not upon its individual members, in order to put the board or its members in error or default, notice must be served upon the board; that is, actual notice must come to its members, while convened officially. As was well said by Mr. Justice Start of the supreme court of Vermont in *Daniels* v. *Hathaway, supra,* one member cannot act alone; he can neither order repairs nor remove a supervisor for neglect of duty. Two might act if legally convened as a board, but unless so acting they would be as powerless as one. Mr. Commissioner Callaway, for this court, in *Williams* v. *Commissioners,* 28 Mont. 360, 72 Pac. 755, said: "To bind the county * * * [the board] must act as an entity and within the scope of its authority. Its members may not discharge its important governmental functions by

45 Mont.—20

casual sittings on drygoods boxes or by accidental meetings on the public streets; the statutes do not vest the power of the county in three commissioners acting individually, but in them as a single board; and the board can act only when legally convened." If, after the board has been officially notified, any two or more of the individual members thereof negligently refuse to act as a board, I know of no reason why those so refusing should not be held personally responsible in damages for any resulting injury to a traveler on the highway.

Meetings of the boards of county commissioners are limited and regulated by law. When not in session as a board, although the individual members are still county commissioners, they are powerless to perform any official function. I am of opinion, therefore, (1) that before the individual members of a board of county commissioners can be held personally liable for negligent conduct in refusing to repair a public highway, the board of which they are members must have actual notice of such defective condition; (2) that if after such actual notice to the board any two or more members thereof negligently or willfully refuse to cause the defect to be repaired, either directly or through the agency of the supervisor, the members so guilty of negligent conduct are liable to one who, without contributory negligence, is injured thereby. I use the words "neglect" and "negligently" advisedly. They are the crucial words in what I have written. Without negligence or willful misconduct there can be no liability. The office of county commissioner is one of very great dignity and importance. In all matters calling for the exercise of discretion or judgment the members of the board are immune from control or criticism by the courts, provided they act honestly and in good faith. Their decisions are not to be disturbed. They are intrusted with large discretionary powers under the law and are presumed to be actuated only by the highest motives and considerations. But they are no more exempt from the consequences of willful or negligent misconduct than are the judges of the courts or any other public officials.

Holding these views, I am of opinion that the judgment of the district court in favor of the respondents Hindson, Richardson and Root should be affirmed.

MR. JUSTICE HOLLOWAY: I concur in the result announced by MR. JUSTICE SMITH, that the plaintiff is not entitled to recover against the commissioners or against the estate of Moses F. Root, deceased. I do not, however, agree with much that is said in the course of the opinion. I still adhere to the conclusion which I announced in my dissenting opinion at the time this cause was first decided.

BY THE COURT: The judgment of the district court in favor of the respondents Hindson, Richardson and Root is affirmed.

MR. CHIEF JUSTICE BRANTLY: A rehearing was granted the defendant commissioners because of the importance of the ultimate question involved and the difficulty the court had experienced in reaching a satisfactory conclusion upon it. Upon the rehearing it was strenuously and plausibly argued that, since the commissioners cannot act as individuals, but only as an organized board, they as individuals have not the power, and therefore cannot be required to give personal attention to the duty of supervising and directing repairs upon the public roads. I nevertheless still believe that the conclusion reached in the original opinion is correct. That the commissioners cannot act except as a board is true, because it is only in this capacity that they represent the county. (*Williams* v. *Commissioners,* 28 Mont. 360, 72 Pac. 755.) That they may not hold more than four regular meetings during the year is also true, except that this limitation does not apply to counties of the first, second and third classes (Rev. Codes, sec. 2891). It is equally true, however, that they may hold meetings at any time when the business of the county requires them to do so (Rev. Codes, secs. 2886, 2891). These special meetings could never be held unless they were rendered necessary by reason of knowledge possessed by the individual members of conditions requiring

the attention of the board. If as individuals they must take notice of other matters requiring official action by them as a body at the place designated by law, there is no apparent reason why they must not take notice that the county roads and bridges need repairs, and that the supervisor in a particular district is, through inefficiency or neglect, failing to give necessary attention to his duties. Can it be said that when a regular meeting has adjourned the members of the body are not responsible to the public until the time for another meeting has arrived? When it is brought to the knowledge of one commissioner that a supervisor is grossly derelict in the performance of his duty, does he discharge his duty to the public by remaining silent and ignoring conditions which, as every private citizen knows, require attention? If so, the power to hold extra sessions has no apparent purpose, and a commissioner is not burdened with any public duty except to go to the county seat four times a year and attend to such duties only as are specially enjoined upon the board by law to be done at that time or are specially called to its attention while in session. The correct theory, it seems to me, is that a commissioner is a public officer on the same footing with every other, and that knowledge gained by him as an individual, of matters demanding official action, requires him, so far as he may, to see that the board takes action; and that when there are floods which must necessarily result in washouts, weakened bridges and other like defects in the public roads, or when similar conditions are produced by other causes, he must be presumed to take notice of them and act with that degree of diligence which the circumstances demand. It is true that in many respects the duties of the board touching the public service, particularly those pertaining to public roads, are judicial or *quasi* judicial, but to say that the different members owe no duty to the public except when they are acting officially, and that the official body is not bound to act until it has been officially informed of conditions imperatively demanding attention, is to put them upon a footing different from that of any other public officer.

Nothing said in the original opinion implies that it is incumbent upon the board to keep the county roads in the state of improvement and repair which is necessary in case of city streets.

Reference in every case must be had to the character of the particular road, the amount of use to which it is subject, and the means and opportunity at hand to give it attention. Reasonable care, in view of the circumstances as they are made to appear, must be the rule. So, where notice of conditions is to be inferred from lapse of time, the circumstances of the case must be considered, and liability be determined by reference to them.

I am fully aware of the difficulty to be overcome in order to reach any satisfactory solution of the question presented; but I am unable to agree with the reasoning of the court, either in *Worden* v. *Witt,* or in *Daniels* v. *Hathaway,* referred to by Mr. Justice Smith. The county is not liable. To sustain the contention of counsel that the commissioners cannot under any circumstances be held liable would leave the citizens without adequate redress, and to hold that the board must have official notice before liability can attach, it seems to me, leads to the same result. I therefore do not concur in the result reached by a majority of the court. I adhere to the conclusion announced in the original opinion: that a *prima facie* case was made out against the commissioners, as well as the supervisor, and that the judgment of the district court should be reversed.